THOMAS WALSH, Appellant, *v.* B. M. CHAMBERS ET AL., Respondents.

February 27, 1883.

13   301
123m 153

1. HUSBAND AND WIFE — CONVEYANCES. — The relation of husband and wife does not vitiate a deed of realty from one to the other.

2. —— A husband who receives from his wife's father's estate a sum of money in consideration of a deed of realty to her, does not, independently of this contract, acquire any right to the money.

3. —— REGISTRY OF DEEDS — DEBTOR AND CREDITOR. — The mere withholding of a deed of realty from record does not give one who became a creditor of the grantor after the deed was recorded, any right, as against the grantee, to levy upon the property in satisfaction of his debt.

4. —— FRAUDULENT CONVEYANCES — DEBTOR AND CREDITOR. — Land sold to a wife by a husband who is indebted but not insolvent, for a valuable

and sufficient consideration which is applied to the payment of the husband's debts, cannot be subjected to the payment of a creditor who became such subsequently.

APPEAL from the St. Louis County Circuit Court, ED-WARDS, J.

*Affirmed.*

H. A. & A. C. CLOVER and HAYDEN & GLOVER, for the appellant: The deed of the husband to his wife is not only absolutely void, but void on the face. — *White* v. *Wager,* 25 N. Y. 328; *Ransom* v. *Ransom,* 30 Mich. 328. The deed in itself is no more valid or operative in equity than in law. — *Loomis* v. *Brush,* 36 Mich. 40. In the absence of a cross bill, chancery could not, under any circumstances, recognize in her the right she seeks to enforce. — *Walker* v. *Walker,* 25 Mo. 367, 375. Equity will not assist the wife under circumstances like the present. The following cases show that the conduct of the defendants bars their defence to this suit. — *Cates* v. *Gerlach,* 44 Pa. St. 46, 47; *Scrivenor* v. *Scrivenor,* 7 B. Mon. 374. And the question is not of actual fraud, but of the tendency of the acts and of public policy. — *Hildeburn* v. *Brown,* 17 B. Mon. 782; *Sands* v. *Hildreth,* 14 Johns. 499; *Tarbuck* v. *Marbury,* 2 Vern. Ch. 510; *Hungerford* v. *Earle,* 2 Vern. Ch. 261. The deed is a nullity, and the record of the deed in October, 1877, did not impart notice to the plaintiff. — *Loomis* v. *Brush, supra;* 14 Mich. 361; *Buel* v. *Irwin,* 24 Mich. 145. An unrecorded deed passes title between the parties; but to be valid against creditors and purchasers without actual notice, a deed must be lodged for record within the time prescribed by law, or within a reasonable time. — *Dozier* v. *Barnett,* 13 Bush, 457; *Thompson* v. *Murrell,* 16 Fla. 773. Property other than her own earnings, coming to the wife during the marriage, is the husband's, when in possession and not settled on the wife to her separate use. — *Kidwell* v. *Kirkpatrick,* 70 Mo. 216; *Clark* v. *National Bank,* 47 Mo. 17; *Woodford* v. *Stephens,*

51 Mo. 443 ; *Smith* v. *Smith*, 50 Mo. 262 ; *Welsh* v. *Welsh*, 63 Mo. 57.   Where a wife advances money to her husband and allows him to use it, such capital and its fruits in business will be subject to the debts of the husband. — *Patton* v. *Yates*, 67 Ill. 164; *Wortman* v. *Price*, 47 Ill. 22 ; *Hackett* v. *Bailey*, 86 Ill. 74 ; *Miller* v. *Payne*, 4 Bradf. 112. It being here shown that there were positive acts constituting legal fraud, it is immaterial whether the plaintiff was a prior or a subsequent creditor.   The chancellor here has not to find fraud as a fact ; consequently the date of plaintiff's judgment is not material.   The facts are patent, and the law stamps these as fraudulent in law. ; Again, that subsequent creditors can avail themselves of such acts is well settled, a fraudulent intent against one creditor being such against all. — Bump's Fr. Conv. 336, 337 ; *Mead* v. *Gregg*, 12 Barb. 653 ; *Hutchinson* v. *Kelly*, 1 Rob. 123 ; *Thomas* v. *Dougherty*, 12 Serg. & R. 448.

MARTIN & LACKLAND, for the respondents : A valuable and adequate consideration stamps a transaction with the *insignia* of good faith, and the burden is imposed on the creditor to impeach it for *mala fides*. — *Glen* v. *Grover*, 3 Md. 212 ; *Wilson* v. *Lott*, 5 Fla. 302 ; *Sibley* v. *Hood*, 3 Mo. 206.   If the debtor sells with the view to raise funds to pay his debts, or if he immediately applies the consideration received to payment of his debts, the supposed intent to defraud his creditors by the sale is conclusively repelled and overthrown. — *Kendall* v. *Hughes*, 7 B. Mon. 368 ; *Brown* v. *Force*, 7 B. Mon. 357 ; *Johnson* v. *McGrew*, 11 Iowa, 151 ; *Uhler* v. *Mulfair*, 23 Penn. 401 ; *Ashmead* v. *Hean*, 13 Penn. 584 ; *Lowey* v. *Pennison*, 2 Bailey, 324. There is no evidence upon which to predicate a reduction to his possession of the wife's personalty, by the husband, in this case.   Until reduced it was hers, and will in all courts be protected for her. — *Croft* v. *Bolton*, 31 Mo. 355 ; *Anthony* v. *Knots*, 6 B. Mon. 24 ; *Ready* v. *Bragg*, 1 Head, 50.   The distributive share of a wife in an inheritable estate,

does not belong to the husband.— *Leaky* v. *Maupin*, 10 Mo. 368; *Gillett* v. *Camp*, 19 Mo. 404; *Page* v. *Estes*, 19 Pick. 269. Not having been reduced to possession by the husband, this portion of her distributive share must remain as at common law, her own, and as such it constitutes a valuable consideration for any purchase made by her.— *Mead* v. *McLaren*, 48 Mo. 116; *Kinner* v. *Walsh*, 44 Mo. 65; *Smith* v. *Smith*, 50 Mo. 262; *Bullard* v. *Briggs*, 7 Pick. 533; *Wicks* v. *Clark*, 8 Paige, 161. "A husband may, with or without the intervention of a trustee, enter into a contract with his wife for a valuable consideration, and a settlement made in pursuance of such agreement will be good against prior as well as subsequent creditors."— Bump, 314; *Schaeffer* v. *Reuter*, 37 Barb. 44; *Wicks* v. *Clark*, 8 Paige, 161; *Babcock* v. *Eckler*, 24 N. Y. 623; *Stockett* v. *Holliday*, 9 Md. 480; *Dyget* v. *Remmerschnaider*, 32 N. Y. 62; *Bullard* v. *Briggs*, 7 Pick. 533; *Miller* v. *Talleron*, Harp. Ch. 145; *Tennison* v. *Tennison*, 46 Mo. 77; *Terry* v. *Wilson*, 63 Mo. 493. The recording of a deed is notice to all persons not to give credit to the grantor on faith of it. So far as creditors are concerned, the omission to record a conveyance might induce persons to become creditors on faith of the grantor's supposed ownership. This could be an injury only as to subsequent creditors becoming such on the faith of the old ownership.— *Hidstran Kingsbury*, 40 Mich. 636; *Coats* v. *Grolach*, 44 Penn. 47; *Lyman* v. *Ford*, 15 Iowa, 22; *Gillett* v. *Gaffrey*, 3 Col. 351; *Dankins* v. *Kions*, 53 Ind. 164; *Case* v. *Phelps*, 39 N. Y. 164; *Hungerford* v. *Earle*, 2 Vern. Ch. 261; *Smith* v. *McDonald*, 25 Ga. 377.

LEWIS, P. J., delivered the opinion of the court.

This is a proceeding in equity to annul a deed from the defendant B. M. Chambers, to the defendant Marie C. Chambers, his wife, to divest her of all title in the property conveyed, and to vest the same in the plaintiff.

It appears from the evidence that, in June, 1874, defendant B. M. Chambers owned the land in controversy, and executed a formal conveyance of it to his wife, for the expressed consideration of $20,000; that he owed, at the time, about $50,000 to the Butchers and Drovers' Bank, of which he was president, but was not insolvent, or supposed so to be; that the executors of Mrs. Chambers' deceased father had in their possession $20,000, due and payable to her from the estate; that Chambers, having agreed with his wife upon a sale of the land to her for that sum, executed and delivered a deed accordingly, which he placed in the hands of one of the executors, who paid to him thereupon the $20,000, in checks. The executor was told that the deed was not to be recorded, and it was not filed for record until October 19, 1877. The money received by Chambers was paid to the bank upon his indebtedness. On January 19, 1880, the plaintiff obtained a judgment against Chambers in the circuit court of the city of St. Louis, for $7,000. Execution was issued, and levied on the land in controversy, as the property of defendant B. M. Chambers. At the sheriff's sale plaintiff became the purchaser for $200. The levy was made on August 30, 1880, and the sale on November 3, 1880. On March 22, 1880, a judgment was rendered in the United States Circuit Court for the eastern district of Missouri, in favor of Samuel B. Churchill, and against the defendant B. M. Chambers, for $1,654.01. An execution upon this judgment was levied on the same land, and Churchill became purchaser at the marshal's sale on January 10, 1881. Upon a hearing of the cause the court dismissed the plaintiff's bill.

The argument for a reversal assumes, as a starting point, that the deed from Chambers to his wife was absolutely void in law, because of the coverture, and the grantee's incapacity to take a deed from her husband. This position is in antagonism with the plaintiff's reply, which pleads that, on the 22d day of March, 1880, " the legal title to said real

estate was not in said B. M. Chambers,  *  *  *  but in said Marie C. Chambers, by virtue of the deed in the petition described." If the deed was void in law, it could not vest a legal title ; and if it was capable of vesting a legal title, it was not void. The next step in the argument is, that, the relation between grantor and grantee being shown, and thus invalidating the deed, the plaintiff has made out his *prima facie* case, and the defendants have done nothing to rebut this, since they have not asked, in their answer, for a judicial recognition of any equitable title in the wife, as resulting from the conveyance. If these propositions be conceded, the plaintiff's case is easily disposed of by the Churchill judgment and sale. That judgment was a prior lien on the property, taking effect from the date of rendition. The plaintiff's judgment was earlier in time, but, as the land lay without the limits of the city, no lien arose until the execution levy. If, then, Mrs. Chambers' equitable rights must be ignored, because not pleaded, the Churchill judgment lien took immediate and complete effect upon the land, as the property of the defendant Chambers, who, having subscribed only a void deed, had made no conveyance at all. A lien thus created by express law needs no aid from a court of chancery, in a collateral proceeding. When followed up by an execution and a sale, it depends upon no race of diligence in subsequent proceedings, and cannot be impaired by the activity of a junior lienor, in instituting a suit like the present. No person claiming under the Churchill judgment, however, is a party to this suit, or will be concluded by any judgment rendered herein. The rights of such persons might therefore be properly excluded from our present inquiry. We refer to them, merely for the purpose of showing that, if they present any real difficulties in the way of the plaintiff's application, such difficulties are not overcome by his method of meeting them, or in any wise by the matter of his reply.

We think that this cause must be determined by the ques-

tion whether Mrs. Chambers acquired, by the deed from her husband, an equitable title, sufficient to defeat the plaintiff's claim under a subsequent judgment and execution sale against her husband. As to the matter of pleading, we do not consider the plaintiff's position tenable. A court of equity will always adjudicate the rights of parties upon the facts appearing before it, whether the parties do or do not infer correctly the legal or equitable consequences of such facts. Indeed, it is always a bad pleading, which undertakes to inform the court of the proper legal or equitable conclusions, rather than of the facts, with a surrender of conclusions to the judicial wisdom. The facts constituting Mrs. Chambers' title, if she has any, are before the court. She must have the full benefit of that title, even if she has failed to define its whole extent in law or equity. It must, upon well-established principles, be here upheld, unless vitiated by some influence, aside from the fact of coverture. *Tennison* v. *Tennison*, 46 Mo. 77 ; *Putnam* v. *Bicknell*, 18 Wis. 333.

It is claimed for the plaintiff, that there was in fact no consideration paid for the deed from Chambers to his wife, because the $20,000 came from her father's estate to her, and became the property of Chambers himself, when he reduced it into possession. The question of reduction into possession, under the marital right, has been repeatedly declared by our supreme court to be one of intention on the part of the husband. *Tennison* v. *Tennison, supra.* Not a line of testimony in this record shows that Chambers received the money " in the exercise of his marital rights and for the purpose of appropriating it to his own use," as expressed in the case just cited. The only witnesses who testified about it stated that the money was in the hands of the executors, and had never been in the possession of either Mr. or Mrs. Chambers. It was first handed to Chambers upon his delivery of the deed to the executor, and solely in consideration thereof. There is nothing even tending to

show that the husband ever entertained a thought of asserting his marital rights over the money, or that his acquisition came by virtue of them.

The conveyance, then, was made for a valuable consideration, as to which there is no pretence of insufficiency in amount. Such being the case, the chances are very strongly against its successful impeachment on the ground of a wrong done or intended against creditors. The grantor's estate was not diminished. He did not, in the transaction, "prefer himself to all his creditors;" since, if his testimony is of any weight, the special purpose was to raise money for a payment upon his indebtedness to the bank, and the money was in fact so applied. These conditions make just such a conveyance as all courts sustain, unless some additional circumstance can be found, sufficient to annul the act for its faulty tendencies.

The deed was withheld from record for more than three years after its execution and delivery. Nothing in the registry laws affords any help to the plaintiff on this account, since his judgment was not rendered until more than two years after the recording of the instrument. The point relied on is, that there is here indicated a purpose of concealment and secresy, from which may be inferred an intent to do wrong. Concealment and secresy do not in themselves import wrong doing. The best and noblest deeds are often done under cover. It is only when they become part of a policy whose design is evil, that such methods fall under the censure of the law. If it be alleged that concealment was adopted as a means for furthering a wrongful design, the fact must be proved, either by admissions of the party accused, or by a resulting evil, or tendency to evil, which the concealment was calculated to promote. If, in any particular case, there be neither a wrong, nor a tendency to wrong shown by other circumstances, it seems quite absurd to fasten upon the mere fact of concealment, as establishing a wrong of some sort. Every citizen has an unquestionable

right to keep his affairs to himself. He incurs no penalty by refusing to put his deeds upon record. He has only to abide the consequences provided for by the registry laws, if nothing be superadded to the naked fact that he keeps his deed in his pocket. If it be a wrong *per se* to withhold a deed from record for two years, it must be also a wrong to wilfully withhold it for a single day, or for an hour. But any delay in filing for record, however short, if practised for a specific purpose affecting the rights of others, — as for obtaining a credit to the grantor on the strength of the property, and thus defrauding the future creditor,— may vitiate the en tire transaction, because of the absolute good faith which equity demands in all dealings which its courts are to sustain. So, if there be an unreasonable delay, and any injury to the right of another results as a natural consequence, it may, in most cases, be assumed that the party intended such an injurious consequence, and the ultimate effect will be the same. But the wrongful purpose, or the wrongful effect, must be satisfactorily shown, either by direct proof, or by fair deduction from the existing circumstances.

There is in this case no direct proof of the purpose for which the deed was withheld from record, excepting the testimony of B. M. Chambers, to the effect that he was apprehensive of a possible popular misunderstanding with reference to the bank of which he was president, in the event of its becoming known that he had conveyed lands to his wife. Whether the motive thus shown was sanctioned or shared in by Mrs. Chambers, the grantee, and whether, if so, it was legitimate or reprehensible, are questions which do not concern the present case. The motive, as explained, does not bear relation to the creditors of Chambers, existing or future. Nor does the effect of the act itself bear any such relation, since it is not shown that he contracted any new debts generally, or that the plaintiff became a creditor, until long after the deed was in fact recorded.

Something is said about the absence of any change of possession, before the deed was recorded. There is nothing in that. The land was not a part of the homestead, and was unoccupied. It was not to be expected that Mrs. Chambers would leave her husband's house, to reside upon her new acquisition. She changed the name of the place, expended money in improving it, and paid the taxes on it from her own purse. This was doing more than any law required of her, as an assertion of her ownership, if one was needed.

We do not find in this record any reason for refusing to sustain the conveyance from B. M. Chambers to his wife, as sufficient in equity to protect her against the claim of the present plaintiff. The judgment is affirmed, with the concurrence of all the judges.