Bank v. Buck.

STATE SAVINGS BANK OF ST. JOSEPH v., BUCK *et al.*;
KING *et al.*, *Appellants.*

In Banc, June 18, 1894.

123  141
65a 142
65a 147
123  141
68a 462
123  141
138 380
123  141
143 412
143 473
144 478
73a 253
123  141
161 642
161 643
123  141
88a 342
88a 343
123  141
91a 484
123  141
d175 ³536
95a ² 84
95a ² 85
95a ² 86
96a ³534

1. **Fraudulent Agreement**: WITHHOLDING DEED FROM RECORD. An agreement between a grantor and grantee to withhold a deed from record is not fraudulent,. unless such agreement is made to deceive others or has that effect.

2. ———: PRESUMPTION: CREDITORS. Every person is presumed to intend the necessary consequences of his acts and if they 'necessarily delay, hinder or defraud creditors, then the law presumes they were done with a fraudulent intent.

3. **Deeds**: WITHHOLDING FROM RECORD: FRAUD. Absolute deeds given by one bank to another as security for loans and discounts and withheld fiom record two and three years so as not to impair the grantor's financial credit are as a matter of law fraudulent as to subsequent creditors.

*Appeal from Clinton Circuit Court.*—HON. JAS. M.
SANDUSKY, Judge.

REVERSED AND REMANDED.

*Huston & Parrish* for appellants.

(1) According to France's evidence these deeds can not be held to be mortgages for the purpose of this suit, and are void as to the defendants. France never agreed to advance anything on them, nor was he under obligations to do so. They were not mortgages when delivered, and, at most, were only to become such on contingencies to be voluntarily performed by France in the future. If, in the future, Buck saw proper to ask advances, and France saw proper to make them, then the deeds were to become mortgages, otherwise they

were not.   A mortgage to secure future advances, which is optional, does not take effect even as between the parties, as such, until some advance has been made. *Ladue v. Railroad*, 13 Mich. 380; *Terhoven v. Kerns*, 2 Barr, 96; *Bank's Appeal*, 36 Penn. 170; *Parmenter v. Gillespie*, 9 Barr, 86 and note *a*; *Sibley v. Hood*, 3 Mo. 206; *Bossville v. Goodwin*, 31 Conn. 74; *Spaden v. Lawler*, 17 Ohio, 371.   (2) No conveyance can be a mortgage, unless it is made for the purpose of securing the payment of a debt, or the performance of a duty, existing at the time of the conveyance, or to arise in the future—not that it may arise, but that by contract entered into at the time of the conveyance, there is to be a future indebtedness.   *Brant v. Robinson*, 16 Mo. 129; *Trescott v. King*, 6 N. Y. 157.   (3) The defeasance and conditions of these deeds rest in parol, and the court will have to resort to the testimony in order to ascertain what they are—the evidence discloses that there was no amount expressed or agreed upon by the parties which said deeds were to secure, nor was there any limit as to the time in which the pretended conditions were to be performed.   *Sheppard v. Sheppard*, 6 Conn. 37.   (4)   According to the evidence these deeds were not given for any particular indebtedness, but to secure a floating indebtedness that might arise in the future.   In order, therefore, to make them effective as mortgages against subsequent creditors of Buck and McCrosky, a specific sum should have been agreed upon, which they were to secure.   *Banking Co. v. Leonard*, 13 S. W. Rep. 521; *Foster v. Reynolds*, 38 Mo. 553; *Trescott v. King*, 6 N. Y. 147; 1 Jones on Mortgages, sec. 374.   The validity of these deeds as mortgages being made to depend on the future agreement of the parties, rendered them void.   *Curles' Heirs v. Eady*, 24 Mo. 117; *O'Neill v. Capelle*, 62 Mo. 202; *Trescott v. King*, 6 N. Y. 157; *Sheppard v. Sheppard*,

6 Conn. 39; *Pettibone v. Griswold*, 4 Conn. 158; *Stoughton v. Pasco*, 5 Conn. 442. (5) Mortgages should give all the requisite information as to the extent and certainty of the contract, so that subsequent creditors may protect themselves. *Church v. Thompson*, 7 Johns. Ch., 14; *Pettibone v. Griswold*, 4 Conn. 158; *Stoughton v. Pasco*, 5 Conn. 442; *Sheppard v. Sheppard*, 6 Conn. 37; *Hart v. Chalker*, 14 Conn. 77. (6) The execution of the deeds in suit with the secret understanding between Buck and France, as sworn to by France, creates a secret trust, and enables Buck to cover up his property, and the deeds are therefore void as to both subsequent and existing creditors, without proof of actual fraud. *Straton v. Putnam*, 4 Atl. Rep. 876; *Guggenheimer's Appeal*, 4 Atl. Rep. 46; *Watkins v. Arms*, 6 Atl. Rep. 92; *Mitchell v. Sawyer*, 5 N. E. 109; *Smith v. Conkwright* 8 N. W. Rep. (Minn.), 876; *Sibley v. Hood*, 3 Mo. 206–211. See also: *Billings v. Sawyer*, 4 N. E. Rep. (N. Y.) 531; *Lackland v. Smith*, 5 Mo. App. 153; *Donovan v. Dunning*, 69 Mo. 436; *McAlvane v. Smith*, 42 Mo. 45; *Waddingham v. Loker*, 44 Mo. 132; *Young v. Heermans*, 66 N. Y. 374; *Bank v. Lime Co.*, 43 Mo. App. 561. (7) The evidence clearly establishes the fact that there was an understanding between Buck and France that France was to withhold the deeds from record, which he did until the failure. This rendered them void as to third parties contracting debts on the faith of Buck's apparent ownership of the land described in the deeds, and without notice of their existence, after their execution and prior to the time they were recorded. *Bank v. Doran*, 109 Mo. 40; *Golsby v. Johnson*, 82 Mo. 602; *Steel v. Coon*, 43 N. W. Rep. 411; *Walsh v. Chambers*, 13 Mo. App. 301; *Hilderburn v. Brown*, 17 B. Monroe, 779; *Cocts v. Gerloch*, 44 Penn. St. 43; *Schweiss v. Woodruff*, 73 Mich. 481; *Hillard v. Cagle*, 46 Miss. 309; *Walton v. Bank*,

13 Col. 265; *Bank v. Houseman*, 6 Paige, 526; *Baker v. Baker's Assignee*, 2 Woods, 87; *Scrivener v. Scrivener*, 7 B. Monroe, 374; Wait on Fraudulent Conveyances, [2 Ed.] sec. 305; *Boygard v. Gardley*, 4 S. & M. (Miss.) 302; *Blackman v. Peterson*, 12 W. Rep. (Ill.) 187; *Blannerhassett v. Sherman*, 105 U. S. 100; *Gill v. Griffith*, 2 Md. Ch., 281; 1 Story's Eq. Jur. [13 Ed.], sec. 382; 2 Pomeroy's Eq. Jur., sec. 810; *Worsely v. DeMotts*, 1 Burr. 467; Herman on Estoppel, sec. 953. (8)   A deed not at first fraudulent may afterward become so by being concealed or kept off record. *Goldsby v. Johnson*, 82 Mo. 602; *Hildreth v. Sands*, 2 Johns. Ch., 33; *Bucher v. Clark*, 12 Blatch. 266; *Blackman v. Peterson*, 24 Ill. App. 237; *Scrivener v. Scrivener*, 7 B. Monroe, 247; Bump on Fraud. Con., p. 82. (9)   The withholding of the deeds from record by France is a fraud in law against these defendants, although there may have been no agreement between France and Buck to that effect, nor any design or intention on their part to defraud anyone, and the plaintiff is estopped from enforcing them. *Hillard v. Cagle*, 46 Miss. 309; *Hilderburn v. Brown*, 17 B. Monroe, 779; *Bank v. Houseman*, 6 Paige, 526; *Steel v. Coon*, 43 N. W. Rep. 411; *Guffey v. O'Reiley*, 88 Mo. 418; *Vilas v. Mason*, 25 Wis. 310; 2 Herman on Estoppel, secs. 953–968–972; *Lukins v. Aird*, 6 Wall. 78.   Where the acts of a party operate as a fraud, even though done without fraudulent intent, he will not be permitted to reap any benefit from them. *Clarkson v. Greeley*, 40 Mo. 114. (10)   The transactions of France and Buck & McCrosky were fraudulent in fact.   Fraud need not be proved by direct testimony, but may be proved by facts and circumstances. What proof sufficient to establish fraud. *State v. Estle*, 6 Mo. App. 6; *Chambers v. Fleeman*, 50 Mo. 239. (11) The court erred in admitting in evidence the deed in suit, and the acts and agreements of the parties subse-

quent to the date of the deed. For the reason above assigned, this evidence was not competent. (12) The court erred in permitting France to testify that, in his transactions with Buck and McCrosky, he did not intend to defraud Buck's creditors or aid Buck in doing so. He should have been required to state facts, and the court left to determine what his intentions were.

*Casteel & Haynes, M. A. Reed, Porter & Woodson* and *Charles E. Pratt* for respondent.

(1) While it is the duty of this court to review the evidence in equity cases, it will defer to the findings of the trial judge, unless he has manifestly disregarded the evidence; and where the evidence is conflicting, it is a rule that findings of the chancellor will not be reversed. *Erskine v. Lowenstein*, 82 Mo. 301; *Snell v. Harrison*, 83 Mo. 652; *Taylor v. Coyer*, 97 Mo. 242; *Judy v. Farmers' Bank*, 81 Mo., 404. (2) The deeds, though absolute in form, if intended by the parties as mortgages, will be so treated in equity. Story's Eq. Juris., secs. 1018, 1019; 3 Pom. Eq. Juris., sec. 1196; *Schradski v. Albright*, 93 Mo. 42; *O'Neill v. Capelle*, 62 Mo. 202; *Brunt v. Robinson*, 16 Mo. 129; *Disloge v. Ranger*, 7 Mo. 329; *Flagg v. Mann*, 2 Sumner, 533. Mortgages are frequently and properly taken in the form of absolute conveyances when the amount of the debt is uncertain and depends wholly or in part upon future advances. *Abbott v. Gregory*, 39 Mich. 68; *Harper's Appeal*, 64 Pa. St. 315; *Rhines v. Baird*, 41 Pa. St. 256; *Kellum v. Smith*, 33 Pa. St. 158; *Flesher's Appeal*, 75 Pa. St. 483; *Meyer's Appeal*, 42 Pa. St. 518. (3) A recorded mortgage to secure future advances in a named sum can not be given priority over subsequent incumbrances or purchasers for an amount in excess of that named; nor can parties, by parol

agreement subsequent to a recorded mortgage, extend the lien beyond the amount named. These propositions are supported by authorities cited by appellant's counsel; but it does not follow that it is necessary to the validity of a mortgage to secure future advances or liabilities that a definite sum should be named. Such a mortgage may be given to secure future advances and responsibilities to be assumed or as a general security for balances which might be due from time to time. *Robinson v. Williams*, 22 N. Y. 380; *Bank v. Finch*, 3 Barb. Ch., 293; *Conrad v. Ins. Co.*, 1 Pet. 447; *Leeds v. Cameron*, 3 Sumner, 488; *Hubbard v. Savage*, 8 Conn. 215; *Walker v. Snedeker*, 1 Hoff. Ch., 145; *Bank v. Cunningham*, 24 Pick. 270; *Lyle v. Duncomb*, 5 Burr. 585; *Lansing v. Woodworth*, 1 Sanf. Ch., 43; *Barry v. Co.*, 1 Sanf. Ch., 314; *Brinkerhoff v. Marion*, 5 Johns. Ch., 320; *James v. Johnson*, 6 Johns. 417; 3 Pom. Eq. Jur., sec. 1197; *Foster v. Reynolds*, 38 Mo. 553. (4) It is settled law in Missouri that persons are not required to record their deeds; and fraud can not be predicated of the mere fact that plaintiff's mortgages were not recorded. *Walsh v. Chambers*, 13 Mo. App. 301. A *bona fide* purchaser of property who has failed to record his deed until a judgment has been recovered against his vendor, but who records it prior to any sale under the judgment, can hold it against the person purchasing under the judgment. *Davis v. Ownsby*, 14 Mo. 170. (5) The object of the registry laws is to protect persons "interested in the title under the same grantor"—there must be a title for value under the grantor, to admit of the question (want of record) being raised. *Davis v. Ownsby, supra*, 176; *Aubuchon v. Bender*, 44 Mo. 565; *Foster v. Holbert*, 55 Mo. 22; *Mann v. Best*, 62 Mo. 496; *Parks v. Bank*, 97 Mo. 133. (6) To sustain an attack on an unrecorded mortgage, there must be "some evidence of a preconcerted and

contrived purpose to deceive and defraud the other creditors of the mortgagor of which scheme the withholding of the instrument from record constitutes a part." Wait on Fraud. Con. and Cred. Bills, sec. 235, p. 332 [2 Ed.]; *Curry v. McConley*, 20 Fed. Rep. 584. (7) "An arrangement or understanding with regard to withholding the mortgages from record, unless the mortgagor should have trouble, did not render them void, but was a matter entitled to consideration by the jury in passing upon the question of fraud at common law." *Folsom v. Clements*, 111 Mass. 277; *Stewart v. Hopkins*, 30 Ohio St. 529; *Thomson v. Pearson*, 29 N. J. Eq. 487. (8) Appellant's sixth point, that the court erred in permitting France to testify that in his transactions with Buck & McCrosky he did not intend to defraud Buck's creditors, is not sustained by the record or the law. "The intent with which an act was done being material, a party to the transaction may testify to the intent with which the act was done." *State to use v. Mason*, 24 Mo. App. 321; *Storm v. Kelley*, 88 N. Y. 422; *Bedell v. Chase*, 34 N. Y. 386; *Graves v. Graves*, 45 N. H. 323; *Hale v. Taylor*, 45 N. H. 405; *Royce v. Guyer*, 76 Ga. 79; *Sedgwick v. Tucker*, 90 Ind. 281. (9) A creditor can not urge estoppel against the grantee of an unrecorded conveyance, unless he shows conclusively: (*a*) An agreement on the part of the grantee to keep the conveyance from record, or a preconcerted plan to deceive and defraud creditors. *Banking Co. v. Duncan*, 86 N. Y. 221; Wait on Fraudulent Conveyances, 235, p. 332; *Curry v. McConley*, 20 Fed. Rep. 585; *Parks v. Bank*, 97 Mo. 133. (*b*) That he, the said creditor, relied upon the specific property covered by the conveyance in giving credit to the grantor of such conveyance, and did not rely upon the general credit of the grantor, nor upon any security which the grantor gave to him, the said

creditor. _Banking Co. v. Duncan, supra; Bank v. Doran_, 109 Mo. 40; _Thomlinson v. Matthews_, 98 Ill. 186. (10) Fraud can not be predicated alone upon failure to record, in the absence of any fraudulent intent or agreement. The courts of this state have never before considered a failure to record constructive fraud as to creditors. _Reed v. Ownsby_, 14 Mo. 170; _Valentine v. Hovener_, 20 Mo. 133; _Stillwell v. McDonald_, 39 Mo. 282; _Porter v. McDowell_, 43 Mo. 93; _Reed v. Ownsby_, 44 Mo. 244; _Sappington v. Oeschli_, 49 Mo. 244.

BLACK, C. J.—The plaintiff is a banking corporation doing business at the city of St. Joseph. The defendant, Harvey S. Buck, and Thomas G. McCrosky were partners, and as such carried on a private banking business at Stewartsville in DeKalb county, having a reported capital in that business of $25,000. They also dealt largely in lands and live stock. In November, 1884, Buck executed, acknowledged and delivered a deed conveying to plaintiff a parcel of land in Stewartsville for the recited consideration of $9,000; and in November, 1885, he conveyed to the plaintiff another lot in the same place and also one hundred and eleven acres of land adjoining the town. The town property so conveyed included the banking house of Buck & McCrosky and a block of buildings known as the opera house property. The lots and land have an estimated value of about $13,000. Though the deeds were absolute in form, they were accepted and held by the plaintiff as collateral security for any advances it might thereafter make to Buck & McCrosky, either by way of loans and overdrafts or re-discounts. The deeds were not recorded until the sixth of November, 1887, two and three years after their respective dates. On that day Buck & McCrosky failed; and Buck, who had recently acquired the banking interest of McCrosky, made a voluntary assignment for the benefit of his creditors.

On the seventh of December, 1887, the defendant King attached the property in suit, and thereafter obtained judgment against Buck & McCrosky for over $12,000. The property was sold under this judgment and under a judgment obtained by the defendant Coberly and another one obtained by Thomas Allen, and King and Coberly and the defendant Ransom become the purchasers. These judgment creditors were all depositors of Buck & McCrosky, and their judgments were recovered upon unpaid deposit accounts.

The plaintiff commenced this suit in 1890 to foreclose the two deeds before mentioned, treating them as mortgages, making Buck defendant. King, Ransom and Coberly were made defendants on their own motion. In their answers they set up title acquired in the manner before stated and pray for a decree setting aside the deeds, on the ground that the deeds were fraudulent as to the creditors of Buck & McCrosky. They make the failure to record the deeds for three years in one case and two years in the other a leading factor in their prayer for affirmative relief.

The record discloses the following further facts: From 1882 to the fifth of December, 1887, the plaintiff loaned Buck & McCrosky large sums of money, and during that time re-discounted notes which the latter had taken in the course of their banking business. On the last mentioned date Buck & McCrosky owed the plaintiff $78,613. This indebtness consisted of notes of Buck & McCrosky to the amount of $50,000, an overdraft of $19,363, and re-discounts collected by them to the amount of $9,250. In addition to this indebtness the plaintiff held re-discounts to the amount of $50,000, payment of which had been guaranteed by Buck & McCrosky. Mr. France, the president of the plaintiff bank, testified that he received a letter from a

bank at Kansas City, on the morning of the fifth of December, 1887, making inquiry as to the financial standing of McCrosky. He says Buck came to his bank on that day and asked for a further loan. Mr. France then learned for the first time that McCrosky had withdrawn from the firm of Buck & McCrosky. Upon further inquiry he found Buck was in a failing condition. He refused to make further advances, and demanded a settlement. He and Buck then made a settlement, whereby Mr. France for his bank took the following property at the following prices: Maple Avenue farm, $22,000; Cowley county land, Kansas, $4,800; Kingman county land, Kansas, $2,500; lot in Stewartsville, $700; McCrosky notes, $42,000; other notes, $3,370. This left a balance of over $3,000 due on the $78,613, which balance was then canceled. The plaintiff still retained the two deeds now in question as security for the re-discounts amounting to $50,000. The trial court found, and the finding is not questioned here, that Buck & McCrosky were indebted to the plaintiff in the sum of $27,819.71 by reason of the insolvency of the makers of some of the re-discounted notes. After the settlement had been concluded and on the same day Buck made the voluntary assignment.

As showing the course of business between the plaintiff and Buck & McCrosky, it may be stated here that at the time of the settlement the plaintiff held deeds for the Maple Avenue farm, the Cowley county land, and the Kingman county land. These deeds were out and out conveyances in form, though they had been previously taken and were held as collateral security. They were made absolute conveyances by the terms of the settlement. The McCrosky notes, amounting to $42,000, were notes given to Buck for lands conveyed by him to McCrosky a few days before

the settlement.   These notes were secured by liens on the lands so purchased by McCrosky.   The evidence shows that the plaintiff from time to time obtained deeds from Buck & McCrosky, other than the two now in question, which were absolute in form, but taken as security and were never recorded. They were, however, surrendered and other security taken in their stead.

With respect to the failure to record the two deeds now in dispute, Mr. France testified that there was no agreement that they should not be recorded, that he simply took them and made advances on them whenever he saw fit to do so.   On cross-examination he said he did not record them sooner, because he did not know Buck was in financial straits; that he believed Buck & McCrosky were honest and would not sell or incumber the property while he held the deeds.   On re-examination he said he did not record them because he relied upon the declarations of Buck & McCrosky that they would not incumber the property without paying off the indebtedness or substituting other collaterals; and for the further reason that to record them would lead to considerable trouble in this, that he would have to call a meeting of the board of directors to have releases executed.

The defendants called L. F. Henry, who testified that he was a depositor with Buck & McCrosky; that after the failure he was appointed one of a committee to look up the condition of the bank affairs; that he saw and had a conversation with Mr. France.   He says he told Mr. France he could not understand why the deeds had been kept off the record, to which Mr. France replied:   "Well, Buck asked me not to put them on record; that it might injure his business."

It appears the defendant King examined the records in the recorder's office of DeKalb county about a month before the assignment, to see what property Buck &

McCrosky owned.   This examination was made in a hasty way by running over the index to the deeds and mortgages.   He found nothing suspicious and continued his deposit account.   A month or so before the assignment, Coberly became suspicious and called upon Buck for a statement.   Buck said he owned the property now in dispute, the Maple Avenue farm and other lands which he named.   With these statements Coberly let his account, amounting to about ten thousand dollars, stand.   King and Coberly knew nothing about the unrecorded deeds held by the plaintiff, but supposed Buck was the owner of the properties thereby conveyed, and of which he at all times had possession.   Coberly obtained security by way of a chattel mortgage on the evening before the assignment, out of which he realized the sum of $4,800.

From this evidence it can not be said the deeds were withheld from record for the purpose of injuring or deceiving other persons.   It fails to show any fraudulent purpose or evil motive on the part of the plaintiff or Buck & McCrosky.   The evidence is conflicting on the issue whether there was an arrangement between plaintiff and Buck & McCrosky to the effect that the deeds were not to be recorded.   There is no claim made that the failure to record them was through any oversight or neglect.   They were certainly withheld by design, and we can not escape the conclusion that they were not recorded because of some understanding to that effect.   To have recorded them would have placed Buck & McCrosky in an embarrassed situation.   The reason assigned by Mr. France to Mr. Henry for not recording them was a good one.   There was no agreement that the deeds should be withheld for any specified time, but we feel bound to say there was an understanding that they should not be recorded until Mr. France regarded it necessary to record them for the protection

of his bank.    In reaching this conclusion we lay more stress upon circumstances disclosed than we do upon particular expressions used by the witnesses while on the witness stand.

We then have these conclusions as to the facts: There was an understanding between France and Buck & McCrosky, when the deeds were accepted by France, that they should be withheld from record unless and until France deemed it necessary to record them for the protection of his bank; but, in making this agreement, the parties thereto were not actuated by any actual fraudulent purpose or evil design to injure the creditors of Buck & McCrosky.

The title of a *bona fide* grantee or mortgagee is good against creditors at large of the grantor or mortgagor, though the deed or mortgage is not recorded.    49 Mo. 247.    A person incurs no penalty for a mere failure to record his deeds, save such consequences as are provided for by the recording acts; and the mere failure to record a deed or mortgage is not even evidence of fraud. Indeed we may go further:    There is nothing wrong or fraudulent in an agreement between grantor and grantee to withhold a deed from record, unless the agreement is made to deceive others, or has that effect.    But if the delay is the whole or a part of a scheme to hinder, delay or defraud creditors, the deed will be void as to creditors.    *Walsh v. Chambers*, 13 Mo. App. 309.

It was held long ago that "a deed not at first fraudulent, may afterwards become so by being concealed, or not pursued, by which means creditors are drawn in to lend their money."    *Hungerford v. Earle*, 2 Vern. 261; *Hildreth v. Sands*, 2 Johns. Ch., 35.    "A deed not at first fraudulent may become so by being concealed, because by its concealment persons may be induced to give credit to the grantor.    In such a case the use that is made of it relates back, and shows the intent with

which it was made. The omission to place a deed on record, or leaving it in the hands of the grantor, or placing it in the hands of a third person to be produced or suppressed accordingly as exigencies may demand, are instances of secrecy that are within the rule." Bump on Fraudulent Conveyances [3 Ed.], p. 39.

There are many cases where the existence of an intent to hinder, delay or defraud is not a question of fact, but is one of law. Every man is presumed to intend the necessary consequences of his act, and if an act necessarily delays, hinders or defrauds creditors, then the law presumes that it was done with a fraudulent intent. Bump on Fraudulent Conveyances [3 Ed.], 22; Wait on Fraudulent Conveyances and Creditors' Bills [2 Ed.], sec. 9. Full and complete recognition is given to this principle of law in *Walsh v. Chambers,* *supra,* which was a case of an omission to record a deed.

In *Hildeburn v. Brown,* 17 B. Mon. 779, the plaintiffs sought to foreclose an unrecorded mortgage against a subsequent assignment for the benefit of creditors. There had been an arrangement not to record the mortgage, except in case of danger of the failure of the mortgagor. The court said: "The effect of the arrarragement, though it may not have originated in any actual frudulent or evil purpose, was to secrete from the public eye the true condition of the debtor, and thereby enable him, under the semblanee of being the owner of unincumbered real estate, to deceive and mislead other persons by inducing them, upon the faith of his supposed unembarrassed condition, to give him credit which would otherwise have been withheld. * * * If not directly within that class of acts which the law denominates constructive frauds, it approximates so nearly to it, that the party avowing himself a participant in such transaction, ought not to receive the countenance or aid of the chancellor in enforcing

any lien or claim growing out of it as against third persons."

*Hillard v. Cagle*, 46 Miss. 309, was a bill brought by judgment creditors to cancel a deed of trust, which covered the plantation, storehouse and merchandise of the grantor. It was made to secure his factors for advances made and thereafter to be made. The grantor was engaged to a large extent in the purchase and sale of cotton. The deed of trust was made in December, 1866, and it was agreed it should not be recorded until the last of January following. The grantor supposed he was solvent, and it seems the beneficiaries entertained the same belief. The reason assigned for not recording the deed was that to do so would injure the credit of the grantor. Insolvency overtook him in less than sixty days, because of a decline in cotton. There was no fraudulent purpose to defeat existing or future creditors. The court, in disposing of the case, lays down the proposition before stated that a man must be conclusively taken to intend the natural and logical result of his acts. The court expressed its conclusion in these words: "We are of opinion that the natural and logical effect of the agreement and assignment, and the conduct of the parties thereto was to mislead and deceive the public, and induce credit to be given to Baggett [the grantor] which he could not have obtained if the truth had been known, and therefore the whole scheme was fraudulent as to subsequent creditors, as much so as if it had been contrived with that motive and for that object."

The recent case of *Bank v. Doran* 109 Mo. 42, was a proceeding by a judgment creditor to postpone two deeds of trust executed by Doran to Bartle. Doran was a large dealer in cattle and hogs, and the deeds of trust covered two farms. The trial court found, and the finding was approved by this court, that there was

an agreement between the parties to the deeds that they should be withheld from record and their existence kept concealed, so as not to impair the credit of Doran; that the deeds were thus witheld and Doran continued to carry on his business; and that the agreement and withholding the deeds from record gave Doran a false and fictitious credit in the community. On these findings we held the deeds to be fraudulent as against the creditors of Doran. The conclusion reached in that case was approved in *Bank v. Frame*, 112 Mo. 515.

It is held in Wisconsin that withholding from record a mortgage at the request of the mortgagor operates as a fraud upon persons who deal with and give credit to the mortgagor upon the supposition that the property which he apparently owns is unincumbered; and that it is a legal fraud though there is no actual intent to defraud. *Paper Co. v. Guenther*, 67 Wis. 101; *Sanger v. Guenther*, 73 Wis. 356.

In applying these principles of law to the case in hand it is to be observed in the first place that these deeds did not, when made or when recorded, express the truth. Though a deed absolute on its face may be shown to be a mortgage, still such a conveyance is generally held to be a badge of fraud, because it affords a convenient cover for fraud upon creditors. Wait on Fraud. Con. and Creditors' Bills [2 Ed.], sec. 238. Now, Buck and McCrosky were by means of these deeds enabled, in part at least, to obtain credit with the plaintiff to three times the amount of their capital in their banking business, and to incur a further contingent liability on re-discounts to twice the amount of such capital. They were daily creating debts at their place of business in DeKalb county, and this fact must have been well known to the plaintiff, for the business relations existing between it and them as disclosed by the evidence before recited gave the plaintiff

such knowledge.   Buck was in possession of the property, and he and McCrosky were doing business in a part of it, and he was the apparent and reputed owner of all of it.   Had these deeds been recorded, depositors and home creditors would have been put upon their guard.   Withholding the deeds from record for so long a time gave Buck & McCrosky a financial standing and credit which they could not otherwise have had, and this fact is shown by the circumstances in evidence as well as by the direct and positive statements of the defendants, made on the witness stand.   Indeed, we feel bound to say the deeds were not recorded because it was believed to do so would injure the business of the grantors.   Looking to the character of the business in which Buck & McCrosky were engaged, and which was well known to the plaintiff, the necessary and inevitable result of withholding these deeds from record was to give Buck & McCrosky a false financial standing, and to mislead and deceive the defendants and other depositors, and the plaintiff must be held in law to have intended that result, though actuated by no fraudulent or evil motive.   The deeds must be held fraudulent as to the defendants.   The judgment is, therefore, reversed and the cause remanded to be proceeded with according to this opinion.   All concur.