TOOTLE, HOSEA & COMPANY, Appellants, v. JOHN J. LYSAGHT & COMPANY, Respondents.

Kansas City Court of Appeals, February 3, 1896.

1. **Attachment:** FALSE REPRESENTATION: FRAUDULENTLY CONTRACTED. An attachment affidavit alleged that the debt was fraudulently contracted. On a trial of a plea in abatement an instruction told the jury that a representation must be false and fraudulently made. *Held*, that "fraudulently made" was a proper addition to the instruction, as a representation must be not only false but fraudulent in order to make the debt fraudulently contracted; SMITH, J., holding that if the representation was false, only, it was sufficient, though innocently made.

2. **New Trial:** NEWLY DISCOVERED EVIDENCE: CUMULATIVE. A new trial will not be granted on the ground of newly discovered evidence which is merely cumulative.

3. **Attachment:** PLEA IN ABATEMENT: JUDGMENT. Where the finding on a plea in abatement is for the defendant, it is error for the judgment to dismiss the cause, but it should merely abate the attachment.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*Reed & James* for appellants.

(1) The court erred in not directing a verdict for plaintiffs and in submitting the issues on the plea in abatement to the jury. This should have been given

because of the conveyance of the shares of stock by the defendant to his son Thomas.    (2)   It was error for the court to refuse plaintiffs' instruction number 5 and of his own motion to modify it by interlining the words "and fraudulently made" and to give it as thus modified.   *Gries v. Blackman*, 30 Mo. App. 2.   (3)   The court erred in giving the instructions asked by defendant, numbers 2, 3, and 5.   (4)· The court erred in not hearing affidavits in support of motion for new trial, under the circumstances of this case, and in not allowing plaintiffs to amend their motion by setting out in the motion the facts contained in the affidavit.   (5) It was error to dismiss plaintiffs' suit.    R. S. 1889, sec. 2304; 37 Mo. 34; 62 Mo. 178; *McIntire v. McIntire*, 80 Mo. 470; *State ex rel. v. Scott*, 104 Mo. 26.

*Joseph Morton* and *James F. Pitt* for respondents.

(1)   The eighth point is that appellants' suit was dismissed.   Plainly this is but a judgment on a plea in abatement; yet, if attachment be substituted for "suit," its terms might be more appropriate.   But, whatever may be the effect of the judgment, there is nothing in the record before this court to show that it is erroneous.

Smith, P. J.—This is an action brought by attachment, wherein the defendants had judgment on the issue made by the plea in abatement, and from which the plaintiffs have appealed.

It is objected by plaintiffs that the trial court erred in refusing, at their instance, to instruct the jury to the effect, if the written statement made to Dunn & Company was false, and that plaintiffs were materially influenced by said statement in giving to defendant the credit of the debt sued for, then such debt was in law

fraudulently contracted by defendant.   The court, on its own motion, modified this instruction by interpolating into it the words "and fraudulently made" immediately after the word "false;" so that, as modified, it read " if the said written statement to Dunn & Company *was false and fraudulently made*," etc.

An action for false representations can not be sustained unless such representations were made with a fraudulent intent.   Such intent is the vitiating virus in every case of deceit having for its foundation false representations.   *Brooking v. Shine*, 25 Mo. App. 277; *Koontz v. Kaufman*, 31 Mo. App. 397; *McBeth v. Craddock*, 28 Mo. App. 380; *Jeliffe v. Collins*, 21 Mo. 338; *Peers v. Davis*, 29 Mo. 184; *Owen v. Rieter*, 44 Mo. 390; *Caldwell v. Henry*, 76 Mo. 254; *Dunn v. Oldham*, 63 Mo. 181.   But not so in actions of attachment, where the ground thereof is that "the debt sued for was fraudulently contracted on the part of debtor."   R. S., sec. 522, subd. 14.   The statute just cited proceeds on the principle of allowing the plaintiff to sue on the debt and prosecute an attachment against the debtor's property for having fraudulently induced it.   The rule that obtains in actions for deceit or false representation has no application in an action of this kind.   It is sufficient to constitute a fraudulent contracting of indebtedness to make false statements relating to one's financial ability which are material, and which lead the other contracting party into engagements which would not have been undertaken but for such false statements.

If a merchant makes a statement grossly false, as to his assets and liabilities, the natural presumption would be that it is made for inducing credit, for he could have no other purpose in view.   If credit is extended to him on the faith of such statement, the transaction, it seems to me, would be a fraud upon the creditor.   Suppose a debtor making such false and

misleading statement does so in ignorance of its false and misleading character, and with no actual intention of deceiving and defrauding those who may enter into contracts with him on the faith of such statement, the effect upon the rights of the creditor would be the · same, whether made with or without the purpose of inducing credit or deceiving and misleading the latter. If through inadvertence or negligence of any kind he makes a statement of his pecuniary condition that is grossly untrue and misleading, its effect, as to those extending credit to him on the faith thereof, and who are injured thereby, is precisely the same as if he had been actuated by a fraudulent or evil motive in making it. The result of such transaction would be that the debt was fraudulently contracted by the debtor. *Finlay v. Bryson*, 84 Mo. 664; *Bank v. Buck*, 123 Mo. 141; s. c., 27 S. W. Rep. 341; *Rosenthal v. Wehe*, 17 N. W. Rep. 318; *Emmerson v. Steel & Spring Co.*, 58 N. W. Rep. 659.

So that where one makes a grossly false statement respecting his pecuniary condition, which deceives and misleads another, in law he must be held to have intended that result, though actuated by no evil or fraudulent motive. So that it was not proper for the court to instruct, that before the plaintiffs could recover they must prove to the satisfaction of the jury that defendant had made a *false and fraudulent* statement regarding his financial standing, and that plaintiffs relied thereon and were materially influenced thereby to extend to defendants credit for the goods, to recover the purchase price for which the suit was brought. This imposed upon plaintiffs, as a condition of recovery, more than the law required. It was equivalent to telling the jury that though the statement was grossly false and led the plaintiffs into making to defendants the sale of the goods they did, and but for which they

would not have done so, yet, unless such statement was actuated by an evil or fraudulent motive, there could be no recovery. The *quo animo* with which the statement was made is not the subject of inquiry by the jury, in a case like this. The statement may, or may not, have been actuated by an evil or fraudulent intent, but, in either case, if it misled and deceived the defendants and caused them to extend to him a credit which they would not have given him had his true pecuniary condition been disclosed to them, the debt was fraudulently contracted and the attachment authorized. Whether the fraud with which the debt is contracted is that in fact or law is immaterial, for either will support the attachment. The word "fraudulent" should have been omitted from the defendant's instruction. It was enough if the statement was materially "false" and led the defendants into contracting the debt for which plaintiffs sue and but for which they would not have done so.

To illustrate the unreasonableness of the rule which I have stated, an extreme case has been suggested— one of great hardship. To this I reply that in law, as well as in mathematics, *exceptio probat reguam*. It follows that the plaintiffs' fifth instruction, as asked, should have been given, and the defendants' second, which was given, should have been refused.

The plaintiffs' instruction in the nature of a demurrer to the evidence and directing a verdict for plaintiffs was properly refused. There was evidence to the effect that the defendant agreed with his son Thomas, after the latter obtained his majority, that the former would pay the latter for his services thereafter to be rendered. There is also testimony tending to prove that the defendant transferred to Thomas the stock in the land company to pay him for his services rendered in pursuance of such previous agreement, and this, with the

other testimony, was ample to justify the submission of the case to the jury.

Plaintiffs are in error in supposing there was no evidence of an agreement between defendant and his son Thomas after he became of age, that he should be paid for his services by defendant, and hence the defendant's third instruction is not subject to the objection the plaintiffs have lodged against it.

No serious objection is urged to the defendants' fifth instruction.    Under the evidence it was properly given.

The plaintiffs further complain of the action of the court in refusing to grant them a new trial on the ground of newly discovered evidence.    The rule is that the refusal to grant a new trial on this ground is not cause for reversal of the judgment, unless it appears that the court abused its discretion.    Such motions are regarded with jealous eye and construed with great strictness by the supervisory courts.    They are granted as an exception and refused as a rule.    They will not be granted when the newly discovered evidence is merely cumulative or calculated to impeach or discredit a witness.    *Cook v. Railroad*, 56 Mo. 380; *State v. Butler*, 67 Mo. 59; *Schmidt v. Rose*, 6 Mo. App. 588; *Corrigan v. Brady*, 38 Mo. App. 659.    Nor are they favored when it does not appear that such evidence would probably change the result.    *Schoular v. Freise*, 14 Mo. App. 436.    The evidence set out in the affidavits accompanying the motion show that the transfer of the stock was made on the day of the sale of the store, and that the interest on the notes of Thomas Lysaght to Pate, for the lots, was generally paid by defendant. This testimony was calculated to impeach or contradict both Thomas Lysaght and the defendant's testimony. But, as has just been seen, this is no ground for awarding the new trial.    If, however, it tends to prove more

than this, I can not discover that, had it been admitted at the trial, the result would have been different. I do not think it is made clearly to appear, that the trial court abused its discretion in refusing a new trial, and so I do not feel at liberty to reverse the judgment on that ground.

Finally, plaintiffs object that the judgment is erroneous in that it dismisses the "whole case."

The judgment is, that "plaintiff take nothing by their suit and that defendants go hence without day and recover of plaintiffs his costs in their behalf expended and have therefor execution." The statute (Revised Statutes, sec. 562) provides that, "if such issue be found for the defendant, the court shall thereupon render judgment that the attachment be abated at the costs of the plaintiff and his sureties." The judgment does not, therefore, conform to the statute and must be held erroneous on its face.

ELLISON and GILL, JJ., in a separate opinion, while dissenting in part, agree that the judgment should be reversed and cause remanded.

ELLISON, J.—We can not agree to that portion of the foregoing opinion which discusses and disapproves the action of the circuit court in modifying the following instruction for plaintiff:

"5. The court instructs the jury that if they believe from the evidence that the written statement made by defendant to R. G. Dunn & Company, January 14, 1891, was false *and fraudulently made,* and that plaintiffs were materially influenced by said statement in giving to defendant the credit of the debt sued for in this case, then the debt sued for was in law fraudulently contracted by defendant, and your verdict will be for plaintiffs."

VOL. 65 app—10

The words in italics were those added by the court, and we think properly. The cause of attachment alleged was that "the debt sued for was fraudulently contracted on the part of the debtor. The statement made by defendants was to a commercial agency, and had reference to their assets and liabilities. If defendants made a false and fraudulent statement to a commercial agency, for the purpose of obtaining credit, and such statement materially influenced plaintiffs to permit them to become indebted to plaintiffs, for the debt sued for, then the cause of attachment just mentioned arises in plaintiffs' favor as fully as if the representations had been made directly to plaintiffs for the purpose of obtaining credit. But the representations, in either case must not only be false, but also fraudulent. If the representations were innocently made, there is no cause of attachment, however false they may have been. Suppose a man is in the eastern market for the purpose of buying goods and has left on deposit in his home bank $25,000 and, therefore, represents his assets at that sum and obtains credit. In point of fact, his bank had closed its doors in insolvency, the day before he made the representation. Has he fraudulently contracted the debt? We think not. It is true that one will be held to have intended the natural and inevitable consequence of his act; and if he knowingly makes a false representation as to his assets, and thereby obtains credit, though without any intention of fraud, it would amount to a fraudulent contracting of the debt. So, if he made a false statement, as being true, without knowing or believing it to be true, it would stigmatize the transaction the same as if he had known it was untrue, notwithstanding he may not have intended to defraud. But in these instances, he knows, either that he has made a false statement, or, if he did not know it was false, he knew that he had affirmed it

as true, when he had no knowledge whether it was or not. In other words, he has not innocently made a misrepresentation.

Of the authorities relied upon to reverse the view adopted by the trial court, some have no bearing on the question, while some directly support the trial court. In one of these cases, *Emmerson v. Steel & Spring Co.*, 100 Mich. 127, the statement made to the secretary of ·state by defendant, upon which Emmerson, on learning of such statement, through a commercial agency, extended credit, represented that the company had assets of more than a million dollars, and liabilities of only a few thousand, when shortly thereafter the defendant made an assignment. The court said: "We are satisfied that these statements of the company were false, *and could have been made with no other purpose than that of establishing a false credit.* In another of these cases, *Rosenthal v. Wehe*, 58 Wis. 621, the decision is based on the statement of the court that: "The defendant *must have known*, when he made such statement, that he owed three times the sum represented." That the statement was "grossly and inexcusably false," and that "it could not be doubted that it was thus *falsely made for the purposes of inducing the plaintiffs to sell his goods on credit.*" In *Finlay v. Bryson*, 84 Mo. 664, the point in this case was not touched upon; but whatever is to be gathered from the language used in the course of the opinion, is altogether in support of the action of the trial court. The case of *Bank v. Buck*, 123 Mo. 141, relates to a class of transactions altogether foreign to the one here considered and has, we think, no application to the present case.

The judgment rendered was that "plaintiffs take nothing by their suit, and that defendant go hence without day and recover of plaintiffs his costs in his behalf expended and have thereof execution." The

statute, section 562, provides, in plea in abatement in attachment cases, that, "if such issue be found for the defendant, the court shall thereupon render judgment that attachment be abated, at the cost of the plaintiff and his sureties." The judgment not conforming to the statute must be held to be erroneous. We shall, therefore, reverse the judgment and remand the cause, with directions to the trial court to enter the proper judgment in cases of trial of pleas in abatement. GILL, J., concurs.