JOHNSON .*et al.* v. DUER *et al.*, *Appellants.*

### Division One, March 25, 1893.

1. **Practice**: EQUITY: REVIEW OF FINDING OF FACTS. The trial court's finding of facts will be greatly deferred to in the supreme court where the evidence is of such a character as to be more readily and clearly understood by the trial court.

2. **City Ordinance**: SEWER CONTRACT: LOWEST BIDDER. Where an ordinance, under which a contract for the construction of a sewer was entered into, authorizes the city engineer to reject any and all bids if deemed too high or the parties bidding are deemed irresponsible, it is too late, after a contract and bond for a sewer have been approved and confirmed by an ordinance and the work has been done thereunder, to object that the contract was not let to the lowest bidder.

3. **City**: SEWER DISTRICTS: SPECIAL ASSESSMENTS. The fact that part of the land in a sewer district cannot be drained by the sewer is not a valid objection to the special assessment to pay for such sewer where the persons objecting are those whose lands are drained by the sewer.

4. ———: ———: CITY COUNCIL: COLLATERAL ATTACK. Where the matter of establishing sewer districts is intrusted by the legislature to the city council, its action is not subject to collateral attack.

5. ———: ———: BENEFITED DISTRICT: ASSESSMENT: AREA RULE. An assessment to pay for the cost of a sewer may be levied on the lands benefited according to their area without regard to their value.

6. ———: ———: CHARTER: SPECIAL ASSESSMENT. Where the city charter provides that district sewers shall connect with a public sewer or other district sewer or with a natural drainage, such requirement relates to a substantial matter and must be complied with, otherwise the cost of the construction of such sewers cannot be enforced by local assessments.

7. ———: SPECIAL TAX BILL: VALID IN PART. Where the statutory proceedings necessary to authorize a tax bill have not been observed in some particulars, the tax will be held invalid only as to what was done outside of the law.

8. **Equity**: INJUNCTION: ILLEGAL TAX. Equity will require, as a condition precedent to an order enjoining the collection of a general tax, the payment or tender of the sum justly due.

9. **City**: DISTRICT SEWER: CONTRACT: ENFORCEMENT OF PAYMENT PRO TANTO. A district sewer ten thousand five hundred feet long was built by a contractor in compliance with the plans of the city engineer and under his immediate supervision, and was duly accepted by the city. *Held*, that the fact that one hundred and ninety-five feet of the sewer was not located on a public street, but ran through private property, the owners of which had not consented thereto, did not relieve the property owners from paying for that part of the sewer that ran through the public streets.

10. **Married Woman**: PUBLIC IMPROVEMENT: PRESUMPTION. Where land upon which a public sewer is constructed belongs to married women in legal right, but not as their separate estate, there is no presumption that they consented to its construction.

11. ———: ———: ESTOPPEL. Nor can the principle of estoppel be applied against a married woman in such case.

*Appeal from Jackson Circuit Court*—HON. JOHN W. HENRY, Judge.

REVERSED.

*Gage, Ladd & Small* for appellants.

(1) The court erred in finding that any part of the sewer was upon private property. (2) The court erred in finding that the owners of lot 70 had no knowledge of the construction of the sewer and that neither of them consented to its construction. (3) The court erred in finding that a considerable portion of the property in the sewer district, owing to the topography of the land, can never make use of the sewer. (4) Even if the sewer were constructed for a certain distance on private property, plaintiffs must show affirmatively that it was without the permission or consent of the owners. *Moore v. Albany*, 98 N. Y. 396; *Matter of Ingraham*, 64 N. Y. 310; *Jackson v. Smith*, 22 N. E. Rep. (Ill.) 431.

(5) Even if the sewer runs through private property without the knowledge or consent of its owners, the tax bills are not for that reason invalid. The city may condemn a right of way after the completion of the improvement. Charter of City of Kansas, art. 8 sec. 1; Session Acts, 1875, p. 244; *Moore v. Albany*, 98 N. Y. 396; *Holmes v. Hyde Park*, 121 Ill. 128; *Hunerberg v. Hyde Park*, 130 Ill. 156; *Leman v. Lake View*, 131 Ill. 391; *Hyde Park v. Borden*, 94 Ill. 33; *Burhaus v. Norwood Park*, 27 N. E. Rep. (Ill.) 1088; *Maywood Co. v. Maywood*, 29 N. E. Rep. (Ill.) 704; *Cochran v. Park Ridge*, 27 N. E. Rep. (Ill.) 940; *Jackson v. Smith*, 22 N. E. Rep. (Ind.) 431; *Miller v. Anheuser*, 2 Mo. App. 168. (6) The plaintiffs cannot be heard to make the complaint that the sewer runs on private property. It is not their property which has been invaded. *Moore v. Albany*, 98 N. Y. 396; *Matter of Ingraham*, 64 N. Y. 310; *Holmes v. Hyde Park*, 121 Ill. 128; *Leman v. Lake View*, 131 Ill. 391; *Jackson v. Smith*, 22 N. E. Rep. (Ind.) 432. (7) These tax bills were issued under the taxing power of the city and not under the power of eminent domain, and they are not invalid, because in making the improvement the city, as to certain third parties, unlawfully exercised the latter power. *Keith v. Bingham*, 100 Mo. 306; *Hyde Park v. Borden*, 94 Ill. 36; *Holmes v. Hyde Park*, 121 Ill. 129. (8) Plaintiffs' complaint, if established, can at most only operate in reduction *pro tanto* of the amount of the tax bill. *State ex rel v. Flad*, 26 Mo. App. 500; *Neenan v. Smith*, 60 Mo. 292; *Bank v. Arnoldia*, 63 Mo. 229; *Farrar v. St. Louis*, 80 Mo. 393; *Miller v. Anheuser*, 2 Mo. App. 168.

*L. Traber, H. Merriweather, W. A. Alderson* and *T. H. McNeil* for respondents.

(1) Because the contractor built a portion of the sewer on private property the tax bills are invalid; but

this would be equally true had the ordinance provided for the location of the sewer on private ground. *Olmstead v. Dennis*, 77 N. Y. 378; *In re Cheeseborough*, 78 N. Y. 232; *People v. Haines*, 49 N. Y. 587; *In re Rhinelander*, 68 N. Y. 105; *Bishop v. Tripp*, 15 R. I. 466; *Railroad v. City of Alleghany*, 92 Pa. St. 100. (2) The portion of the sewer in question built on private property was in fact no sewer at all, and hence the sewer did not connect "with a public sewer or other district sewer or with the natural course of drainage" as required by the charter of Kansas City. *City to use v. Swope*, 79 Mo. 448; *Bayha v. Taylor*, 36 Mo. App. 427. (3) The appellants contend that it did not matter that a portion of the sewer was built on private property, because the city can in the future condemn such property for the purpose of sewerage. This is not correct. The sewer in question is a district sewer; and the power of Kansas City to condemn private property for sewerage purposes was restricted to public sewers. Charter of Kansas City, 1875, art. 9, sec. 4. (4) The evidence positively negatives the giving of any consent to place the sewer on the private property, and the trial court found that owners did not give such consent. *McBeth v. Trabue*, 59 Mo. 642; *Reimer v. Stuber*, 20 Pa. St. 458. (5) It is declared by the court in its findings that a considerable portion of the property in the sewer district, owing to the topography of the land, can never make use of the sewer. The boundaries of the sewer district should include only property which could be connected with the sewer; for by such connection only can property be benefited by the construction of the sewer. The benefit of an ordinance is the touchstone of its validity. *Corrigan v. Gage*, 68 Mo. 541; *Thomas v. Gain*, 35 Mich. 155; *King v. Reed*, 43 N. J. L. 186; *Hanscon v. Omaha*, 11 Neb. 37; *Tide-Water Co.*

*v. Coster,* 18 Me. 527; *State v. City of Elizabeth,* 40 N. J. L. 274; *Dyar v. Village of Farmington,* 70 Me. 51; *Halpin v. Campbell,* 71 Mo. 493; Dillon on Municipal Corporations [4 Ed.] sec. 761, par. 7.

MACFARLANE, J.—This is a bill in equity brought by plaintiffs, twelve citizens and property owners of Kansas City, on behalf of themselves, and all other owners of real estate, situate in a certain sewer district, number 84, in said city, who may be interested.

The object of the suit is to declare void a certain ordinance of the city of Kansas, establishing a sewer district and providing for the construction of a sewer therein, and certain tax bills, issued by virtue thereof, and that the clouds on the real estate of plaintiffs, created thereby, may be removed.

The defendants are Alexander Duer, who is, as charged in the petition, the contractor by whom the sewer was built and to whom were issued certain special tax bills in payment therefor, and the International Loan and Trust Company, to whom said bills had been assigned as collateral security.

The petition alleged that the tax bills were void for the following reasons:

(1) The contract for the construction of the sewer was not let to the lowest and best bidder as was required by the charter for all such work.

(2) That the sewer was for the distance of one hundred and ninety-five feet built upon and through private property, and continues so without the knowledge or consent of the owners thereof; and that such part of the sewer is the part through which the whole sewer district is drained, and there is no other outlet provided, nor any connection with a public or other district sewer, or with the natural course of drainage as required by the charter.

(3) That the sewer was not constructed along the center of Dora avenue as required by the ordinance establishing it, but for a distance of one hundred and ninety-three feet runs diagonally through said avenue.

(4) That the topography of the district is such that a large portion of the land and lots therein cannot be drained by said sewer, and owners of such property cannot make use of or have any benefit from said sewer and its laterals; and that said sewer has not all the necessary laterals, inlets and other appurtenances required.

The answers of defendants were in substance general denials.

The charter of the city of Kansas, then in force, (acts 1875, p. 200) gave the council power to construct three classes of sewers, public, district and private. Public sewers should be constructed by taxes levied upon the property of the whole city. District sewers should be established within certain districts, to be described by ordinance, and should connect with a public sewer or other district sewer, or with the natural course of drainage. The expense of construction of district sewers should be charged as a special tax against the lots situate in the district, exclusive of improvements, in proportion to the area of the whole, exclusive of public highways. The certified tax bills when assessed should be delivered to the contractor for the work, who is given power to collect the amounts thereof, in the name of the city, by the ordinary processes of law. The tax bills so certified should constitute a lien upon the land against which it was charged.

Section 4, article 9, of the charter gave the city power to condemn private property for the construction of public sewers as other property is condemned for public use. Section 1 of article 8 gives the council power to establish, erect and keep in repair bridges,

culverts and sewers and to regulate the use of the same. Article 7 provides for condemning private property for a "route for sewers" or other public improvement whenever the council shall by ordinance provide for establishing, opening, widening, extending or altering the same. The charter further requires that all improvements of whatever kind shall be let to the lowest and best bidder.

The ordinances provide the details for carrying out the provisions of the charter. They require that the bids shall be opened and the lowest and best bid shall be accepted, provided, that the city engineer, or other person acting, "may reject any and all bids if deemed too high, or the parties bidding are deemed irresponsible." And immediately after the acceptance of any bid the city engineer shall require the bidder to enter into a written contract with the city.

The work was let to one Caddegan, who was the lowest bidder, who failed to enter into the contract and give the bond required, and after a delay of about twenty days the contract was let to defendant Duer on his bid, which was the next lowest, but which was about $1,100 more than that of Caddegan.

The ordinance establishing sewer district 84 and providing for the construction of the sewer in question required it to connect with the district sewer of district number 82 in Alton avenue at the north line of district number 84 and run thence along the center of Dora avenue to a given point. The contract required defendant Duer to perform the work in conformity with the plans and specifications on file in the office of the city engineer in strict obedience to the direction of the city engineer; that work should commence at such points as the engineer should direct and should conform to his directions.

The evidence shows that Dora avenue was supposed, when the contract was let, to be a continuation of Alton avenue, taking a direction almost at right angles to it. The sewer of district number 82 ended in the center of the end of Alton avenue. The sewer in question under the ordinance and contract was required to connect with, and empty into, this sewer number 82. The evidence tended to prove that Dora avenue instead of meeting Alton avenue, so as to make one the continuation of the other, intersected it some distance north of its termination, and north of the point in district sewer number 82, at which connection should have been made. The sewer, under this evidence, before it reached the center of Dora street, passed over private property for the distance of one hundred and ninety-five feet before it reached Dora avenue at all, and then ran diagonally along said avenue about one hundred and fifty feet before it reached the center thereof.

The evidence established that the entire length of the sewer and laterals was ten thousand five hundred feet; that a part of the land in the east end of the district is platted into lots and blocks with streets and alleys through it; that this platted portion has lateral sewers and inlets, but the west end, composing nearly half the district, is not platted, but is owned in large tracts by various persons. It was admitted that on account of the topography of the land there was property in the district that could not be connected with the sewer for drainage.

The court upon the evidence found the following facts, which were entered as a part of the judgment:

"That the plat by which Dora avenue was dedicated to the public intersected Alton avenue at a point northwest of the point at which the sewer in question connected with the sewer on Alton avenue; that plats in the office of the city engineer located the street so

that it intersected Alton avenue at the point where the connection of the sewer in question connected with the Alton sewer; that the ordinance providing for the construction of the sewer in question required it to be constructed in the center of Dora avenue as that avenue was located on the maps in the engineer's office; that the sewer was constructed in exact conformity with said plans and specifications, and was constructed in the center of Dora avenue to a point within one hundred and ninety feet of its connection with the district sewer on Alton avenue; that at that point it left Dora avenue and was constructed upon private property owned in common by two married women not parties to this suit, one of whom was a married woman residing in Kansas City, and the other a married woman residing in the state of California when the sewer was constructed, and had no knowledge of the construction of the sewer; and neither of whom consented to its construction through their property; that for about one thousand feet or more there are no provisions made for lateral sewers, and that a considerable portion of the property in the sewer district, owing to the topography of the land, can never make use of the sewer.

"That the city engineer duly advertised the letting of the work of constructing said sewer, and, after bids were opened, it was awarded to one Caddegan, who having failed to enter into a contract with the city to do the work within five days after being notified by the city engineer, the latter, about twenty days after it was awarded to Caddegan, without readvertising for bids, let the work to the next lowest lowest bidder under the first advertisement, who constructed the sewer.

"On these facts, and on the sole ground that a part of the sewer was constructed upon private property without the consent of the owners, and without acquir-

ing the right by condemnation proceedings so to con-
struct the sewer, I find for the plaintiffs.''

Upon this finding a decree was entered as prayed
and defendants appealed.

I. It is in the first place insisted that the finding
of facts by the circuit judge was against the weight of
the evidence, particularly as to the manner of the
junction of Alton and Dora avenues. We are asked
to review the evidence and make a new finding on that
question.

In equity cases, it is true, this court is not bound
by the findings of the trial court on questions of fact,
but yet it does properly defer to them largely when it
is apparent that the evidence offered in open court
could have been more readily and perfectly understood
than when shown by means of an attempted transcript
of what could not be transcribed. The evidence on
this point consisted principally of plats and explana-
tions of the situation of the land, the location of streets
and sewers by reference to them. The plats were
before the court and the witnesses evidently pointed
out on it the localities. Hence the court could under-
stand, but we cannot, what was meant by a witness
when he says, ''The base of the bluff was taken as the
base of *these* lines *here,* and *these* other lines run clear up
on the bluff, and there were stone monuments up along
*here* in all *these* places, and that distance is taken from
the base of the bluff and *that* line runs *through  here.*''

We must then take as established by the evidence
the finding of fact by the court, that the sewer as con-
structed runs for a distance of one hundred and ninety-
five feet through property which is not included within
the lines of Dora street, and to which, so far as the
evidence shows, the right had never been acquired by
the city.

II. The ordinance providing for letting contracts for public works to the lowest and best bidder, and authorizing the engineer or other person acting to reject any and all bids if deemed too high, intrusts to that officer a large discretion in the matter of letting these contracts.   After the contract and bond have been approved and confirmed as this one was by an ordinance of the common council, and after the work had been done thereunder, it is too late in this proceeding to question its regularity.

III. It is insisted that the topography of the district is such that a portion of the land and lots therein cannot be drained by the sewer and the owners of such property cannot make use of it.

A sufficient answer to this complaint is that these plaintiffs do not charge that their property cannot be drained by the sewer, and they have no concern with the property of others.   To relieve other property from assessment would have the effect of increasing, rather than diminishing, the taxes of those specially benefited. Besides the matter of establishing sewer districts is intrusted by the legislature to the common council, and its action is conclusive in a collateral attack. *Grading Co. v. Holden*, 107 Mo. 305; *Keith v. Bingham*, 100 Mo. 307; *City of St. Joseph v. Owen*, 110 Mo. 445.

IV. Objection is also made to the rule assessing the charges on the lots of the district in proportion to their area, rather than that of their values.   In a recent case the same objection was made on the ground that the charter providing for such a mode of assessment was unreasonable and void.   In disposing of that case the court says:   "What constitutional limitations there may be on the exercise of the taxing power in respect to these local improvements this case does not require us to determine.   We are all of the opinion that none prohibit the use of the 'area-rule' of appor-

tionment of the cost of district sewers, as provided by the charter of St. Joseph." *City of St. Joseph v. Farrell*, 106 Mo. 437.

V. Drainage of a district for sanitary purposes is the ground upon which the compulsory construction of sewers, and the imposition of special taxes to pay the cost thereof, is authorized. The charter provides that district sewers shall connect "with a public sewer or other district sewer, or with the natural course of drainage." The efficacy of the sewer, as a means of drainage, depends entirely on this requirement of the charter. A sewer with no proper outlet would create a nuisance, instead of improving the sanitary condition of the locality. The requirement then is of a substantial matter, and, if not followed by an ordinance establishing a sewer, the cost of construction could not be enforced by local assessments. *City of Kansas v. Swope*, 79 Mo. 448; *Winkler v. Halstead*, 36 Mo. App. 25.

VI. The complaint of plaintiffs is that a portion of the sewer next to the connection with another district sewer not having been built within the street limits, as required by ordinance, is not under the control of the city and is liable to be closed at any time by persons who may lay claim to the land, and therefore in practical effect there is no connection as required by the charter.

There is great force in this claim, and the question has demanded our most earnest consideration. We have reached the conclusion that the irregularity, resulting as it does from a construction of the work under a valid ordinance and contract, and not from infirmities in either the ordinance or contract themselves, and in view of the fact that the mistake, if one was made, was not that of the contractor but of the city authorities in pointing out to him the lines of the street, the variance should not defeat the entire contract price.

There is no doubt that a court of equity will grant relief to a tax payer to remove the shadow cast upon the title to land by an illegal assessment of benefits, but, when the relief is not sought until after the work has been completed, at a great cost to the contractor, and when the complaining landowner has received the benefits of the improvement, the relief should not be granted except upon an exceedingly strong showing. As was well said by ELLIOTT, C. J., in a recent Indiana case: "The assessment is made upon the theory that the benefit to the property is equivalent to the expense. The owner, therefore, receives a thing of value, and he ought, in equity and good conscience, to pay for it, notwithstanding the fact that the local officers may not have obeyed the statute in every regard. It is just to protect his title when he offers to pay for the things of value rendered him in the form of the benefit resulting from the improvement; but it is not just to relieve him from paying the assessment because the local officers have made mistakes." *Jackson v. Smith*, 22 N. E. Rep. 432.

Where a contractor has departed from the course marked out to him by the ordinance for the purpose of lessening his work, increasing his profits or any other private advantage or gain, he would not be entitled to that equitable consideration which is presented in this case, where the mistake, if one was made, was that of the city authorities and not the contractor. There was ten thousand five hundred feet of sewer constructed by defendant Duer at a cost to him of over $41,000. One hundred and ninety-five feet of this, costing about $1,200, say complainants, was not laid along the center of Dora street as required by the ordinance, and therefore the contractor shall forfeit the whole contract price.

So rigid a rule has not been followed even in suits at law upon tax bills. When the statutory proceedings necessary to secure a tax bill have not been observed in some particulars, the tax has been held invalid only as to what was done outside the authority of law. *Neenan v. Smith*, 60 Mo. 292; *Farrar v. St. Louis*, 80 Mo. 393.

On the same principle a common and well recognized rule of equity requires, as a condition to an order enjoining the collection of a general tax, that a payment or tender of the amount justly due be first made. *Arnold v. Hawkins*, 95 Mo. 569; *Morrison v. Jacoby*, 114 Ind. 84.

The charter of this city of Kansas, and indeed most charters, in recognition of the equitable principle that one should pay for what he receives and enjoys, provides that, in defense of suits upon tax bills, "if any party shall set up by way of defense that the work was not done in a workmanlike manner, according to the class of work mentioned in the contract, and that such party, before the commencement of the suit, tendered to the contractor or other holder of the bill the full value of the work done, and shall establish the same on the trial, the recovery shall only be for the amount so tendered, and judgment for costs shall be rendered against the plaintiff; but no suit on any bill shall be defeated or affected by any irregularity affecting only other bills, or matter rendering any other bill invalid, in whole or in part."

The courts of other states have gone far in upholding special assessments in whole or in part as the justice of the case required. It has been held in Illinois that the validity of an assessment was not affected by reason of the fact that the right to an easement for the improvement had not, at the time, been acquired by the municipality. *Village of Hyde Park v. Borden*, 94 Ill. 26; *Holmes v. Village of Hyde Park*, 121 Ill. 129;

*Hunerberg v. Village of Hyde Park*, 130 Ill. 156; *Maywood Co. v. Village of Maywood*, 29 N. E. Rep. 704.

The same cases hold that the question was between the municipality and the owner of the property through which the improvement was made, and that one whose property had been taxed could not be heard to complain. To the same effect are the rulings in Indiana. *Jackson v. Smith*, 22 N. E. Rep. 432; *Palmer v. Stumph*, 29 Ind. 329; *McGill v. Bruner*, 65 Ind. 421.

In a recent case in New York an assessment was held valid, though, in the grading of the street, the city had trespassed upon private property. *Moore v. Albany*, 98 N. Y. 396.

Much importance in these cases is given to the fact that the cities interested could acquire the right through private property by condemnation.

On the other hand well considered cases hold that building a public improvement outside the lines of a street and on private property would render the whole assessment to pay for such work void. *Railroad v. City of Alleghany*, 92 Pa. St. 100; *People v. Haines*, 49 N. Y. 590. In these cases it was held that there was no power granted by the legislature to construct the improvement and assess the cost upon property benefited, without having first acquired the right from the property owner to do so. The other cases hold that when the power is granted to acquire the right by condemnation, the assessment could precede the acquisition of the right to use the private property, and the assessment, when made, would be conclusive of the liability of the property owner for the tax assessed.

We cannot see that these cases, which are relied upon by counsel for their respective positions, have much direct applicability to the case in hand, for the reason that the assessment is not made, under the charter of Kansas City, until after the work has been

completed. We have no doubt, under the provisions of the charter noted in the statement, the city has the right when deemed necessary to condemn land for the construction of a district, as well as a public sewer; but the city is not a party to this suit and may not deem the exercise of the right necessary.

But these decisions are useful in showing that every presumption that can be fairly raised in favor of the validity of tax bills, after the work has been completed, will be indulged, and that all reasonable equities will be applied. The courts have presumed that the owners of private property upon which public improvements are built, with their knowledge and without objection, gave their consent thereto, and they will not thereafter be heard to claim compensation therefor. *Village of Hyde Park v. Borden*, and other cases cited *supra*.

Defendants insist that we ought to indulge the presumption here that the owners of the one hundred and ninety-five feet of private property gave their consent to its use in constructing this sewer. This we cannot do for the reason that the property, as found by the court, belonged to married women in legal right, and not as separate estate, and the doctrine of estoppel does not apply to them in such circumstances. *McBeth v. Trabue*, 69 Mo. 642; *Mueller v. Kaessmann*, 84 Mo. 323.

What then would be an equitable disposition of this case? The contractor has done all he contracted to do in full compliance with plans, specifications and plats in the office of the engineer, and under the immediate direction and supervision of that officer. The work has been accepted by the city and it makes no complaint. Complainants and other property owners have a system of sewerage consisting of over ten thousand feet ready for use upon making a connection of one hundred and ninety-five feet which can be constructed

by the city for an estimated cost of $1,200. It is true the system is useless until it is opened through this private property or just within the lines of the street as required by the ordinance, but this is through no fault of the contractor. The connection was made by him and approved by the city.

Our opinion is that the property owners should pay the contract price for all the work except such part as is constructed through private property, and, until a proper proportion of the tax bill is paid or tendered, no injunction should be granted. *Miller v. Anheuser*, 2 Mo. App. 168.

As far as the evidence in this record shows, the fault or mistake was made by the city and the contractor, if he have a remedy for the work not paid for, must look to the city unless the city secures the right to maintain the sewer over the property between its connection with the sewer in district 82 and the point of its departure from Dora street.

We have some doubt from the evidence before us whether the finding of the court that the sewer was laid for one hundred and ninety-five feet through private property belonging to married women, without their knowledge or consent, was justified by the evidence. If the property belonged to married women, as their separate estate, or to persons other than married women, it should be presumed that they gave their consent to the use of the land in the absence of proofs to the contrary. *Leman v. City of Lakeview*, 131 Ill. 391; *Moore v. Albany, supra.* Judgment reversed and petition dismissed. All concur, BARCLAY, J., in the result only.