BOONE COUNTY NATIONAL BANK, *Appellant*, v. NEWKIRK, *et al.*

Division One, June 8, 1898.

1. **Fraud:** KEEPING OF MORTGAGE FROM RECORD. The keeping from record of a mortgage by the mortgagee, if the doing so does not give or tend to give the mortgagor a false or fictitious credit, will not prevent the mortgagee from being a preferred creditor for the property conveyed to him to the extent of his claim.

2. ———: ———: AGREEMENT.  Nor is there anything wrong or fraudulent in an agreement between grantor and grantee to withhold a deed from record unless the agreement is made to deceive others or has that effect.

3. ———: ———: ———: CASE STATED.  The facts of this case are reviewed and the conclusion reached that they do not show that the mortgage was fraudulently kept from record, or that the finding of the chancellor was against the preponderance of the evidence.

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*John Montgomery, Jr.*, and *George P. B. Jackson* for appellant.

(1)  There is but one question in this case, and that is whether the deed to the defendant Wood can be sustained as a lien prior to the attachment of the plaintiff bank.  It must be conceded that the plaintiff extended the time for the payment of its debts, and thereby lost advantages, when it would not have done so, if it had known of the existence of the deed to Dr. Wood.  It is now the settled law of this State that if a party takes a deed of trust to secure a debt, or a deed absolute in form intended as security for a debt, and agrees to withhold it from record in order to save the grantor's credit, then such deed is void as to subsequent creditors, notwithstanding it may have been given to secure a *bona fide* indebtedness.  *Central National Bank v. Doran*, 109 Mo. 40; *State Bank v. Frame*, 112 Mo. 515; *Bank v. Buck*, 123 Mo. 141; *Goldsby v. Johnson*, 82 Mo. 602.  The evidence in the case shows that the deed to the defendant Wood was tainted with this vice, and therefore the plaintiff was entitled to a decree giving the lien of its attachment priority over the defendant's deed.

*F. M. Black* and *Sangree & Lamm* for respondents.

(1) The title of a *bona fide* purchaser or mortgagee, though the deed or mortgage is not recorded, is good as against creditors at large. Such unrecorded deed or mortgage is good as against a sale under a judgment, if recorded before sale under the judgment. These propositions are well settled law in this State. *Sappington v. Oschli*, 49 Mo. 244; *Davis v. Ownsby*, 14 Mo. 170; *Valentine v. Havener*, 20 Mo. 133; *Stilwell v. McDonald*, 39 Mo. 282; *Potter v. McDowell*, 43 Mo. 93; *Reed v. Owensby*, 44 Mo. 204; *Bank v. Buck*, 123 Mo. 141; *Bank v. Rohrer*, 139 Mo. 369. (2) The mere failure to record a deed or mortgage does not render the instrument fraudulent as to creditors of the grantor. The only penalty in such a case is that named in the recording acts. Even an agreement between grantor and grantee to withhold a deed or mortgage from record does not render the instrument fraudulent as to creditors of the grantor, unless the agreement is made for the purpose of deceiving and defrauding others, or has that effect. To succeed in this case the plaintiff must show to the entire satisfaction of the court that the deed in question was withheld from record for the purpose of defrauding creditors or that it had that effect. *Bank v. Rohrer*, 139 Mo. 369; *Bank v. Buck*, 123 Mo. 141; *Bank v. Doran*, 109 Mo. 42; *Bank v. Frame*, 112 Mo. 515. (3) Creditors have no claims upon the homestead of the debtor. As to them there can be no fraud in the disposition of the homestead. *Davis v. Land*, 88 Mo. 437; *Grimes v. Portman*, 99 Mo. 229; *Kendall v. Powers*, 96 Mo. 142; *Hart v. Leete*, 104 Mo. 337.

WILLIAMS, J.—Defendant, Cyrus Newkirk, conveyed to his codefendant Wood, by deed absolute in form, but intended as a mortgage, certain real estate, constituting the homestead of said Newkirk on Broadway in the city of Sedalia, valued by him at $25,000 or $30,000. This deed was dated March 6, 1894, but was not recorded until the fourth of May thereafter. Plaintiff instituted suit by attachment against said Newkirk and caused the writ to be levied upon the property in controversy on the eighth day of May, 1894. Judgment was rendered in said suit in favor of plaintiff, in accordance with a stipulation to that effect, on the fifteenth of October in said year for $16,240.53. Plaintiff then instituted this suit in equity to have its judgment declared a prior lien upon said property, on the ground that the deed to defendant Wood was withheld from record by him in accordance with an understanding and agreement to that effect, in order that the credit and financial standing of Newkirk might not be impaired. It is charged that Wood agreed to, and did retain the deed without recording it, so as to enable Newkirk to carry on his business, renew his obligations and borrow money, without the existence of this conveyance being known. W. A. Latimer, receiver of the First National Bank of Sedalia, to whom a deed was made by Newkirk, dated May 9, 1894, as security for any debts that might be due said bank from him, was originally joined as a defendant, but the suit was subsequently dismissed as to him. Newkirk made default, while Wood answered, contesting the averments necessary to make out plaintiff's case. The trial in the circuit court resulted favorably to defendant and plaintiff has appealed.

Newkirk was indebted to plaintiff bank upon notes which were renewed April 4 and 8, 1894, respectively.

He, before they became due, applied for an extension.
At that time he was president of the First National
Bank of Sedalia, and was the owner of bank stock,
real estate in Kansas City, in the State of California
and elsewhere, and was regarded as solvent and
responsible. The title to the Broadway property
involved in this suit was then vested in him according
to the deed records of Pettis county, and he was
residing there with his family. The president of
plaintiff bank went to Sedalia the last of March or the
first of April in said year, and found Newkirk sick and
unable to transact business. He met Thompson,
cashier of Newkirk's bank, and discussed the renewal
of the notes with him. He made inquiry in a general
way in regard to the value of the stock of the First
National Bank of Sedalia, some of which he held as
collateral for said notes, and also as to the property of
Mr. Newkirk. He and Thompson passed the Broad-
way residence during that visit to Sedalia. He spoke
of the property, and said he would like to have his
debt secured by a deed of trust upon it. Thompson
responded that Newkirk could not afford to encumber
that, or would not do it, or used words of similar
import in answer to this suggestion. Plaintiff's presi-
dent consented to renew the notes for ninety days, and
they were accordingly so renewed. He testified that
in making this arrangement, which was done about the
first of April, he relied upon the real estate in contro-
versy as being unencumbered property of Newkirk.

The indebtedness to Wood, for which the prop-
erty was conveyed to him as security, originated in
this manner: Thompson, cashier of the First National
Bank of Sedalia, of which Newkirk was president and
defendant Wood a director, was also loan agent of the
Mutual Benefit Insurance Company of Newark, New
Jersey. He had negotiated a loan for said company

to Wood of $15,000 which was secured by deed of trust upon real estate. This loan was for a term of years and became due August 30, 1893. Wood, for a year and a half or two years before the maturity of this debt, was accumulating a fund to liquidate it. His practice was to take the money, as he from time to time secured it for this purpose, to the bank, and, as he claimed, deposit it; but, as Newkirk and Thompson testified, loan it to them. His object in raising the money was well known, however, and it was understood that it should be forthcoming to pay off his obligation to the insurance company when it became due. He was allowed interest from the date of each deposit, and generally, if not always, took the personal obligation of Newkirk and Thompson therefor. He had sufficient money in their hands, when the debt matured, to pay it and it was understood that they would do so. They gave him a receipt dated September 2, 1893, stating that he had deposited with them $15,000 for the purpose of taking up this loan. The money was not paid to the insurance company. They made some plausible explanations to him and he agreed that the matter might stand over to January 1, 1894. They assured him that it should be paid at that date. That time arrived and passed and they failed to discharge the debt. The insurance company became impatient. Peremptory orders were given Thompson, as its agent to foreclose the deed of trust. Wood was kept in ignorance of this correspondence, and the insurance company, likewise, was uninformed as to the real debtors and the true situation. A crisis was finally reached when something had to be done. The only solution was to induce Wood to apply for an extension of the loan, and to get the company to grant it. Thompson agreed to undertake this upon condition that Newkirk would secure

Wood. This Newkirk agreed to do, by making him a deed to the property in controversy, if an extension could be arranged. Thompson went to Newark, New Jersey, had a personal interview with the proper officers of the company, and procured their consent to the extension. He reached Sedalia upon his return on the morning of Easter Sunday, March 25, 1894. An application for the extension was signed by Wood and forwarded to the home office, and, in due course of mail, notice was received that the request had been granted. The proper papers were prepared and executed and the loan extended for one year from January 1, 1894. Newkirk's deed to Wood for the property in controversy, dated March 6, 1894, and purporting to have been acknowledged on that day, was delivered to the latter, and also a note for $15,000, which, confessedly, the deed was intended to secure. The parties differ concerning the date of the delivery of the deed. That will be considered later.

The bank, of which Newkirk was president and Thompson cashier, as above stated, failed, and on May 3, 1894, closed its doors. Wood filed his deed for record the next morning at 8 o'clock. The bank evidently must have been in a failing condition when the deed was made.

It is well settled by the decisions of this court that "the title of a *bona fide* grantee or mortgagee is good against creditors at large of the grantor or mortgagor, though the deed or mortgage is not recorded. . . . And the mere failure to record a deed or mortgage is not even evidence of fraud. Indeed we may go further: There is nothing wrong or fraudulent in an agreement between grantor and grantee to withhold a deed from record unless the agreement is made to deceive others or has that effect." *Bank v. Buck*, 123 Mo. 141; *Hord v. Harlan*, 143 Mo. 469; *Bank v. Rohrer*, 138 Mo. 369;

*Bank v. Doran*, 109 Mo. 40. There can be no doubt whatever of the *bona fides* of the debt to Wood, and it was entirely proper, equitable and just for Newkirk to secure it. Wood seems to have taken little part in determining the *form* of the security. He does not appear to have asked for or demanded the conveyance to him. He was anxious to have *his* property released from the deed of trust upon it, but there is nothing to show that at that time he was suspicious of the solvency or reliability of Newkirk or Thompson. They explained that the money was invested and that it could not then be raised. He consented to the arrangement concerning the extension, and to the security proposed by them, which was ample for his debt. Newkirk and Thompson, who testified for plaintiff, stated that Wood agreed to withhold the deed from record in order to prevent any injury to the former's credit and financial standing. There were circumstances in evidence, also, that tended to support plaintiff's theory. Defendant Wood, upon his part, positively denied any such understanding. He stated that he laid the deed upon a table near his clerk's desk, and told him that it was to be recorded, and further testified that the failure to record it was an oversight. In this, the clerk corroborates him. His stenographer, too, strengthens his position by her evidence. She states that she saw the deed upon the table and read it over and then placed it with some letters among a number of papers upon the defendant's desk. The testimony of these parties tends to show that the omission to file it was not intentional. The trial court was asked by plaintiff to make a special finding of the facts. This was done. The court says: "The testimony on the question of what caused the Newkirk deed to be kept off the record from April 10 to May 4 is conflicting. The court can not find, in the light of all the facts and after giving due weight to all

the testimony, that there was any agreement to that effect.''

Again, the renewal notes to plaintiff are dated on the fourth and eighth of April, 1894, as above stated. The visit of plaintiff's president to Sedalia, when he agreed to make the extension, was on or about the first of April. The testimony of the defendant Wood, his clerk, and also his stenographer, is emphatic that the deed was delivered to him, at his store, by Thompson, on the tenth of April, 1894. They state that they are able to fix the time, because it was on the day that Wood delivered possession of the Kaiser Hotel, of which he was receiver, to one Fisher. They say that at the time of the delivery of the deed Thompson spoke of the relief to Wood that the transfer of the hotel would be. Thompson, who was plaintiff's witness, says the deed was not prepared until his return from Newark. This was on Easter morning, March 25. He was pressed upon this point, and asked whether, if the acknowledgment was dated March 6, he might not be mistaken, and he answered, ''No matter what date may appear on it or the acknowledgment, it would not cause me to change my mind and admit that I have been mistaken in the statement heretofore made, *that the deed was executed after I returned from Newark.*'' Mr. Newkirk's impression was that the deed was made after the return of Thompson. The instrument itself was dated March 6, and the certificate shows that it was acknowledged on that day, and other testimony tends to establish that fact. Thompson says that it was prepared on the day it was executed. No reason appears in the evidence why it should have been dated on the sixth of March if not delivered till later. The defendant's evidence is positive, however, that it was delivered on the tenth of April, 1894, as stated. This also conforms to about the time when the

extension of Wood's debt to the insurance company was finally consummated. After Thompson's return from Newark, the proper application for this extension had to be forwarded to the home office at that place and acted upon by the board or committee having such matters in charge. A letter to Wood agreeing to grant the extension, dated at Newark, New Jersey, April 4, 1894, is in evidence. It is reasonable from all the testimony, to conclude that this matter was finally arranged and the deed delivered about the time defendant and his witnesses state. This was after the renewal of the notes due plaintiff. The circuit court in its findings of facts says: *"And the court further finds that the renewal of plaintiff's notes was prior to the delivery of the deed to Wood and prior to his knowledge of its existence, and that nothing he did in the premises or failed to do, tended to or did give Newkirk a false or fictitious credit with plaintiff or caused plaintiff to renew its notes and extend their payment or operated as a fraud on plaintiff bank."*

Much of the testimony was given orally upon the trial. The evidence of Thompson and Newkirk was in depositions. The defendant Wood and his witnesses were examined in open court. The former was called by the plaintiff. The chancellor saw these witnesses and heard them testify. While this court will not abdicate its right and duty to review the evidence in equity cases, "still much deference is given to the findings of fact by the trial courts, on account of the superior advantages they possess for weighing the evidence and judging of the credibility of the witnesses." *Parker v. Roberts*, 116 Mo. 657; *Johnson v. Duer*, 115 Mo. 366; *Lins v. Lenhardt*, 127 Mo. 271; *Kincaid v. Irvine*, 140 Mo. 615. This is a well settled rule of practice in equity cases in this court.

We have carefully examined the testimony and are unable to say that the finding of facts made by the

circuit court is against the preponderance of the evidence, and it results therefrom that the judgment must be affirmed. BRACE, P. J., and ROBINSON and MARSHALL, JJ., concur.