## JONES, Appellant, v. LEVERING et al., Respondents.

**St. Louis Court of Appeals, January 16, 1906.**

1. **FRAUD: Misrepresentations of Solvency: Weight of Evidence.** In an action by a judgment creditor to postpone to his judgment the lien of a mortgage held by the defendant bank, on the ground that the defendant bank represented the judgment debtor to be solvent and thereby induced plaintiff to give him credit when, at the time, he was insolvent and owed the defendant bank a large sum of money upon a mortgage withheld from record, the evidence is examined and *held* that plaintiff failed to make out a case showing equities against the defendant bank.

2. ————: **Withholding Mortgage from Record: Agreement.** Withholding a mortgage from record in pursuance of an agreement between the mortgagor and the mortgagee operates as a fraud upon persons who give credit to the mortgagor upon the supposition that his property is unincumbered, and this is so though there is no actual intent to defraud.

3. ————: ————: ————. But in the absence of an agreement that it should be withheld from record, or that credit was given on account of its being withheld from record, or other circumstances tending to show fraud, the mere withholding of a mortgage from record is not of itself sufficient to show it.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*E. W. Major* and *J. D. Hostetter* for appellant.

The act of withholding from record a mortgage for the benefit of the mortgagor, is a fraud in law, and gives

a. fictitious credit to the mortgagor upon the supposition that the property which he apparently owns is unincumbered and subject to claims of creditors in general. It is a legal fraud, although no actual intent to defraud be shown. Bank v. Buck, 123 Mo. 156; Bank v. Doran, 109 Mo. 40; Wall v. Beedy, 161 Mo. 625; Walsh v. Chambers, 13 Mo. App. 301; Bank v. Frame, 112 Mo. 502; Bump on Fraudulent Conveyances (3 Ed.), 22.

*F. L. Schofield* for respondent.

It may well be conceded that the law in respect of the withholding of deeds and mortgages from record in pursuance of an understanding or agreement between the parties to do so, is all that is set out and applied in the several cases cited in appellant's brief. But a reading of these and other like cases is all that is needed to show that the case at bar falls utterly short of the proof which is invariably required. There might well have been added many others in this State to the cases cited. Bank v. Rohrer, 138 Mo. 369; Bank v. Newkirk, 144 Mo. 472. The unbroken current of legal decision in this State ever since the early case of Davis v. Ownsby, 14 Mo. 170, is that the title of a bona fide purchaser or mortgagee under deed or mortgage unrecorded is good against creditors at large and will prevail against sales under judgments and executions if such deed or mortgage be recorded before such execution sales. Davis v. Ownsby, 14 Mo. 170; Valentine v. Havener, 20 Mo. 133; Stillwell v. McDonald, 39 Mo. 282; Reed v. Ownsby, 44 Mo. 204.

STATEMENT.—The suit is in equity. The petition states, in substance, that defendants Wm. H. and Oscar Pindell owned and operated a large flour mill and grain elevator, in the city of Hannibal, Missouri, for a great number of years; that they also owned a grain elevator at Frankford, Pike county, Missouri, and that plaintiff,

in 1891 and until the Pindells went out of the milling
business in 1904, had charge of the Frankford elevator
as the agent of defendants Pindell and as such bought
and shipped grain for them at Frankford.     Defendant
Levering is the president and chief officer of the defend-
ant bank.     On August 1, 1895, the Pindells made their
promissory note to the defendant bank for twenty-five
thousand dollars, due one year after date, and bearing
interest from date at the rate of six per cent per annum,
and to secure said note executed a deed of trust on lots
five, six and seven, block forty-six, in the city of Han-
nibal, upon which lots is situated the mill, elevator and
scales of said Pindells.     By agreement between Lever-
ing, the officers of the bank, and the Pindells, the deed
of trust was kept off the record of Marion county for the
purpose of giving the Pindells a fictitious credit in the
commercial world.     It is stated that from the time plain-
tiff took charge of the Frankford elevator, as the agent
of the Pindells, until December, 1902, he did  business
through the Frankford Exchange Bank at Frankford in
this manner:     He made drafts on the Pindells and de-
livered them to the bank.     The banks took the drafts and
entered a credit to the account of the Pindells for the
amount of the drafts and sent them to the Farmers &
Merchants Bank at Hannibal for collection.     Plaintiff
would pay for wheat as he bought it from the farmers
by giving checks on the Frankford bank, signed by the
Pindells per himself as their agent.     In December, 1902,
the Pindells had failed to meet all the drafts plaintiff
had thus drawn on them and were indebted to the Frank-
ford bank, on account of these drafts, in the sum of fif-
teen hundred dollars.     Plaintiff considered himself in-
dividually liable for this indebtedness and he and Cash,
the cashier of the Frankford bank, went to Hannibal for
the purpose of ascertaining the financial condition of the
Pindells and had a conversation with Levering in regard
thereto, in which conversation Levering assured the
plaintiff that the Pindells were solvent, but withheld any

and all information in regard to the twenty-five thousand dollar note and deed of trust due from the Pindells to the bank and led plaintiff to believe it was safe to give them credit. It is stated that the fifteen hundred dollars indebtedness to the Frankford bank was paid after this interview with Levering. It is further stated that after the interview, Cash, the cashier of the Frankford bank, refused to give credit to the Pindells and required the plaintiff to give drafts drawn by himself in order to raise money to buy wheat, and that the Pindells, on account of the wheat bought for and shipped to them by the plaintiff, became indebted to plaintiff directly, and indirectly to the Frankford bank, in the sum of fifteen hundred dollars, for which sum they executed their note to the bank, which note plaintiff indorsed as security. The Pindells did not pay the note at maturity and plaintiff was compelled to pay the same, and in a suit on said note, plaintiff, on the tenth day of March, 1904, obtained a judgment, in the Hannibal Court of Common Pleas, against the Pindells for $1,556.25, which judgment is in full force and effect and remains wholly unsatisfied. It is alleged that in December, 1902, and at the time plaintiff interviewed Levering, the Pindells were wholly insolvent and that their insolvency was well known to Levering and to the defendant bank; that from what Levering said of the solvency of the Pindells, plaintiff was induced to give credit to them. It is also alleged that on August 1, 1904, the bank surrendered the note and deed of trust for twenty-five thousand dollars and took from the Pindells a new note for twenty-five thousand dollars and a new deed of trust to secure the same, on the lots described in the old deed and also on lot eight, in the same block, and placed the deed of trust on record on the seventeenth day of the same month. It is further alleged that all the other property owned by the Pindells was mortgaged to its full value prior to the obtention of plaintiff's judgment and that they are wholly insolvent and possessed of no property, real or

personal, upon which anything could be realized by sale on execution.

The prayer of the petition is as follows:

"Wherefore plaintiff prays the court to adjudge the lien created by said deed of trust hereinbefore mentioned dated August 1, 1903, and recorded in book 170, at page 138, of the deed records of Marion county, Missouri, to be subordinate on the property covered thereby to the plaintiff's said judgment debt and he further prays that said real estate embraced in and covered by said deed of trust and all the interests of the said William H. and Oscar Pindell and their said wives therein be ordered sold and the proceeds, after the payment of the costs and expenses of such sale, be first used in the settlement and discharge of plaintiff's said judgment debt and costs and that the remainder be then applied upon the said twenty-five thousand dollar note, the payment of which is secured by said deed of trust, and for all other and further orders and decrees as to the court may seem necessary and proper for the protection of plaintiff's rights and interests and for general relief."

The bank and Levering filed a joint answer. The two Pindells filed their joint answer. In these answers it is admitted that the Pindells made their note to the bank for twenty-five thousand dollars, in 1895, and secured the same by deed of trust and that said deed of trust was never placed of record. But it is denied that there was any agreement or understanding by and between the Pindells, or either of them, and the bank, or any officer or officers of the bank, that the deed of trust should be withheld from record. It is admitted that the original note and deed of trust were surrendered to the Pindells on August 1, 1903, and a new note for the same sum taken and a new deed of trust given to secure said note and placed upon record. It is admitted that plaintiff obtained his judgment against the Pindells, as alleged in his petition and it is affirmatively alleged that it was generally known, by the people of the city of Han-

nibal that the Pindells were indebted to the bank in the sum of twenty-five thousand dollars and that these facts were known to Cash, the cashier of the Frankford bank. The other allegations of the petition are denied, either generally or specially. The court found the issues for the defendants and dismissed plaintiff's bill. Plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. The present insolvency of the Pindells is conceded; whether or not they were insolvent in December, 1902, is not made clear by the evidence. Levering's testimony tends to show that they were solvent at that time. That he believed they were solvent is shown by the fact that he sold his crop of wheat for that year to them on credit, taking their individual note for the purchase price ($2,200) of the wheat. The evidence shows that they were unable to keep their mill going during the year 1903, that they run it spasmodically, and early in 1904, were compelled to shut it down for want of funds to keep it in operation. It is shown by the evidence that the Farmers & Merchants Bank had been furnishing them funds to run the mill for a period of about thirty years, and evidently had confidence in their honesty and ability to pay until sometime in the year 1903, when the bank must have lost faith in their ability to run the mill on a paying basis and withheld further advances to them, and on August first proceeded to make certain its lien for the payment of the twenty-five thousand dollars note by taking a new note and deed of trust and placing the deed upon record.

Plaintiff in respect, to the conversation had by him and Cash with Levering, in December, 1902, stated:

"We went to Mr. Levering's bank and Mr. Levering went into the back room with us and we asked him the question about the financial standing of the Pindells, and he said they were all right, and as evidence to prove to me and to Mr. Cash that they were all right, he says: 'They owe me $2,200,' and he had their note for $2,200,

That's the only thing that he said. I was perfectly easy then. He didn't say one word about that being all the debt that they owed. But he said that they were all right and solvent. He made no written statement as to their solvency. The $2,200 indebtedness which Mr. Levering mentioned was indebtedness to him, Levering individually. Mr. Levering did not at that time make any statement about the Pindell Bros. being indebted to the bank in the sum of $25,000 nor did he say anything about the bank holding a deed of trust on Pindell Bros. real estate to secure that amount."

Cash stated that previous to this time he had learned in some way from some one in banking circles that the Pindells were largely indebted to the Farmers & Merchants Bank, that they were "indebted to the limit." Plaintiff's evidence does not show that Levering gave him any assurance or guarantee as to the actual financial condition of the Pindells, in December, 1902. Plaintiff did not ask for details or particulars. His evidence shows that he only asked Levering for his opinion and that he got it; for it is not shown that Levering did not speak what he believed to be the truth, on that occasion, therefore, there is no room to hold that Levering purposely misled the plaintiff or induced him to extend credit to the Pindells. Plaintiff's evidence is, that he relied upon Levering's opinion. He did not ask for a written statement or guarantee of the financial condition of the Pindells. He did not put himself in an attitude to hold Levering good for any representations or statements he might make with respect to the solvency of the Pindells; had he done so, Levering, in all probability, would have refused to give any such guarantee. On this branch of the evidence, plaintiff has shown no equities against Levering or the defendant bank, although he swore he was induced to extend credit to the Pindells on the strength of what Levering said in regard to their solvency.

2. Plaintiff's evidence substantiates the allegations of his petition, in respect to the manner in which wheat was bought by him as the agent of the Pindells at Frankford, and shows that their indebtedness to him (reduced to judgment) accrued in the manner described in his petition. He offered no evidence whatever tending to show that there was any understanding or agreement between the bank and the Pindells, or either of them, whereby the first deed of trust should be withheld from record. Both the Pindells swore there was no such agreement or understanding. Levering testified that there was no such agreement or understanding and that the bank was at liberty to put the deed of trust on record at any time, if it had deemed it necessary. He further testified that the note was taken in the first place as collateral security for the payment of a number of smaller notes which the Pindells owed the bank; that the bank examiner had suggested that the bank should have some sort of security from the Pindells and that the note and deed of trust were taken, not on the direct suggestion of the bank examiner, but for the purpose of satisfying him; that the officers of the bank did not think it necessary to place the deed on record as they had confidence in the honesty of the Pindells and did not believe they would give a second deed of trust; that the bank had carried the Pindells for years and nearly all their indebtedness was to the bank and that these facts were generally known in Hannibal, and that Cash, the cashier of the Frankford bank, had been told of the existence of the unrecorded mortgage, either by himself or the cashier of his bank. Cash testified that he knew, in a general way, that the Pindells were largely indebted to the defendant bank but he had no recollection of ever having been told of the existence of the unrecorded mortgage. Plaintiff testified that he never heard of the unrecorded mortgage until after the second one had been given and recorded for over four months, too late for him to proceed against the Pindells in bankruptcy.

Jones v. Levering.

It is well settled law that the withholding of a mortgage from record, at the request of the mortgagor or in pursuance of any agreement or understanding between the mortgagor and mortgagee, operates as a fraud upon persons who deal with the mortgagor and give him credit upon the supposition that the property which he apparently owns is unincumbered, and this is so, although there is no actual intent to defraud any one. [Bank v. Buck, 123 Mo. l. c. 156, 27 S. W. 341; Bank v. Doran, 109 Mo. 40, 18 S. W. 836; Wall v. Beedy, 161 Mo. 652, 61 S. W. 864; Bank v. Frame, 112 Mo. l. c. 515, 20 S. W. 620.]

In the case of Bank v. Buck, supra, there was no evidence that the deeds were withheld from record on account of any agreement, but there was evidence, and it was found as a fact by the court, that it was believed to put the deeds upon record would injure the business of the grantors. On this evidence and evidence that the grantors obtained large credit on the supposition that they owned the property conveyed by the unrecorded deeds, the court found that the deeds were withheld from record for a fraudulent purpose. There is no such evidence in the record before us.

In Bank v. Newkirk, 144 Mo. 472, 46 S. W. 606; Walsh v. Chambers, 13 Mo. App. 301, and Wall v. Beedy, supra, it was held that the mere fact that a mortgage is kept from record is not sufficient evidence of fraud.

The mere fact of keeping a mortgage from record is but a link in the chain of evidence to show fraud; to complete the chain and establish fraud, other facts and circumstances tending to prove fraud must be linked in it. There are no such other facts or circumstances shown in the record before us, hence the allegations of fraud in plaintiff's petition were not proven. The learned circuit judge so found and we have no hesitancy in adopting his findings.

The judgment is affirmed. All concur.